# The Baltimore and Potomac Railroad Company *vs.* John G. Reaney.

*Liability for Injuries occasioned by Unskilfulness or Negligence— Grant of Authority by the Legislature to a Railroad company to tunnel the streets of a City, may be Implied—What is not Damnum absque injuria—Difference between Public and Private corporations in their Liability for Injuries caused by doing a Lawful act—Measure of Damages—Proximate and Remote causes—Liability of Wrong-doer for the Natural consequences of his Act.*

If a party by carelessness in making an excavation in his own ground, causes the fall of or injury to a house erected on the land adjoining, he is liable in damages for the injury.

If a party acting under lawful authority inflict injury in the manner of executing the authority, as by unskilfulness or negligence, he is liable for the consequences.

Balt. & Potomac R. R. Co. *vs.* Reaney.

Authority by the Legislature to a railroad company to tunnel the streets of a city, may be granted by implication.

Damage done to the house of a party by reason of the excavation of a street by a railroad company made under lawful authority, is not *damnum absque injuria*, and he may recover therefor without showing that the power delegated to the company has been illegally or negligently exercised.

As against a municipal government in the careful exercise of its right and power to grade, change and improve a street, there can be no right of action for any unavoidable injury done; but as against a private corporation in no wise connected with the municipal government, obtaining authority to use the streets in an extraordinary manner for its own private purposes and profit, the case is quite different.

As against such party the owner of a lot of ground with a building thereon, bounding on a street, is entitled to the natural support which the bed of the street may afford to the foundation of his house. And notwithstanding authority may have been obtained both from the city and the State Legislature, to make the extraordinary use of the street, yet that authority must be exercised at the peril of the party to whom it is delegated; and if any injury accrues to private property in the exercise of the power, the party producing it must be held liable. And such liability arises even though the injury is the natural or inevitable result or consequence of the act authorized to be done.

The owner of the corner house binding on the street excavated being entitled to such support to the foundation of his building as the bed of the street afforded before it was excavated, if the adjoining house was bound to the corner house, and was lawfully dependent upon it for its stability, the disturbance of the natural support of the corner house by the act of the party making the excavation, whereby injury is done to the adjoining house, furnishes the owner of the latter a cause of action that entitled him to recover for such injury.

The measure of damages in such case would be a sum that would compensate the plaintiff for the injuries done to his particular interest in the premises.

Whoever does a wrongful act is answerable for all the consequences, that may ensue in the ordinary and natural course of events, though such consequences be immediately and directly brought about by intervening causes, if those intervening causes were set in motion by the original wrong-doer.

APPEAL from the Court of Common Pleas.

The facts of the case are sufficiently stated in the opinion of the Court. The first exception was taken by the

defendants to the granting by the Court below, of the second, third and fourth prayers of the plaintiff. The second exception was taken by the defendants to the refusal by the Court to grant their third and fifth prayers. The verdict and judgment being for the plaintiff, the defendants appealed.

The cause was argued before BARTOL, C. J., STEWART, MILLER, ALVEY and ROBINSON, J.

*William A. Fisher* and *Daniel Clarke*, for the appellants.

The right to enter the City of Baltimore, and construct its railroad within the limits of the city, was conferred by the Legislature upon the Baltimore & Potomac R. R. Co. under its charter, and the amendments thereto. *Act of 1853, ch. 194, secs.* 12, 16, 22; *Act of 1870, ch.* 80, *sec.* 7; *Tenn. & Ala. R. R. Co. vs. Adams,* 3 *Head,* 597; *Mohawk Bridge Company vs. Utica and Schenectady R. R. Co.,* 6 *Paige,* 554; *Smith vs. Helmer,* 7 *Barbour,* 416; *Mason vs. Brooklyn City & New Town R. R. Co.,* 35 *Barbour,* 374.

The Legislature had the power to authorize the building of the Balt. & Potomac Railroad within the limits of the City of Baltimore, or upon a street or other public highway. *Tennessee & Ala. R. R. Co. vs. Adams,* 3 *Head R.,* 597; *Newbury Turnpike Co. vs. Eastern R. R. Co.,* 23 *Pick.,* 326; *Drake vs. Hudson River R. R. Co.,* 7 *Barbour,* 508; 4 *B. & Ald.,* 30; *Philadelphia and Trenton R. R. Co.,* 6 *Whart.,* 43; *Mercer vs. Pittsburgh & Fort Wayne & Chicago R. R. Co.,* 36 *Penn.,* 99; *Broadway & Locust Point Ferry Co. vs. Hankey,* 31 *Md.,* 349; *People vs. Kerr,* 37 *Barbour,* 357.

The Mayor and City Council of Baltimore had the right to prescribe the manner in which the Baltimore & Potomac Railroad Company should construct its road through the streets of the city, and to provide for the mode of

building it in a tunnel along its streets, as contained in the ordinance, approved May 29th, 1869. *See Charter of Baltimore City, City Code, p.* 12; *Baltimore City Code, sec.* 823; *Northern Central R. R. Co. vs. Mayor, &c. of Baltimore,* 21 *Md.,* 103.

The evidence shows that the City of Baltimore, acquired title to Wilson street, when the same was excavated, by condemnation for public use as a street. And the grant of the use of its streets for the construction of a railroad in a tunnel was a proper exercise of power over the streets, and is authorized as a public use to which the street may be applied under the title acquired by condemnation. The grant, made by the ordinance, conferred the right as against the city, which otherwise the company could have only acquired by condemnation. *Plant vs. Long Island R. R. Co.,* 10 *Barbour,* 26; *Adams vs. Washington and Saratoga R. R. Co.,* 11 *Barbour,* 414; *Chapman vs. Albany & Schenectady R. R.,* 10 *Barbour,* 363; *Lexington & Ohio R. R. Co. vs. Applegate,* 8 *Dana,* 309; 6 *English R. R. Cases,* 422; *Porter vs. North Missouri R. R. Co.,* 33 *Missouri,* 128; *Murphy vs. City of Chicago,* 29 *Illinois,* 279.

But if any doubt could exist as to the power of the Mayor and City Council to pass the ordinance approved May 29th, 1869, the Legislature has ratified the ordinance, and the power exercised by the Mayor and City Council. *State, ex rel. Mayor, &c. of Balt. vs. Kirkley,* 29 *Md.,* 85, 105; *Mayor, &c. of Annapolis vs. State,* 30 *Md.,* 112; *Act of* 1870, *ch.* 80, *sec.* 7.

The evidence showing that the excavation of Wilson street, was made under the power conferred by the Legislature, and the Mayor and City Council of Baltimore, and that the ordinance required the excavation of Wilson street, the plaintiff's second prayer improperly declared that he was entitled to recover upon the facts therein set forth.

If damage ensue to adjoining property *not taken*, from the exercise of power conferred by competent authority, then the damage is *damnum absque injuria*, and the party injured cannot recover for any damage sustained by reason of the exercise of the power, unless it can be shown that the power has been illegally, improperly or negligently exercised. *Douglass vs. Boonsborough Turnpike Road Co.*, 22 *Md.*, 219; *Tyson vs. Commissioners of Baltimore Co.*, 28 *Md.*, 510; *Houck vs. Wachter*, 34 *Md.*, 265; *Corey vs. Buffalo, Corning & New York R. R. Co.*, 23 *Barbour*, 482; *Porter vs. North Missouri R. R. Co.*, 33 *Missouri*, 128; *O'Connor vs. Pittsburg*, 6 *Harris*, 189; *Green vs. Borough of Reading*, 9 *Watts*, 384; *Monongahela Nav. Co. vs. Cons*, 6 *Watts & Serg.*, 101; *Henry vs. Pittsburg & Allegheny Bridge Co.*, 8 *Watts & Serg.*, 86; *Hatch vs. Vermont Central Railway*, 25 *Vermont*, 49; *New York & Erie R. R. Co. vs. Young*, 33 *Penn.*, 180; *Plant vs. Long Island R. R. Co.*, 10 *Barb.*, 26.

The plaintiff's third prayer is objectionable because, although it properly places the right to recover upon the fact of due care and diligence in the manner of excavating the street and constructing the work, yet it fails further to require the jury to find that the excavation of Wilson street, was the *proximate* cause of the injury, and does not submit to the jury to find upon the facts set forth in the defendant's third and fifth prayers as qualifying the plaintiff's right to recover.

There was evidence, upon which to predicate the third and fifth prayers.

It is well settled that a party is not liable in damages for an act which is not the direct, immediate and proximate cause of the damages sustained. 3 *Parsons on Contracts*, *page* 177, *sec.* 5.

The reason of the rule is plain, that if every one were answerable for *all* the consequences of his acts, no one could tell what his liabilities at any moment might be.

In the case of *Insurance Co. vs. Tweed,* 7 *Wallace,* 44, the Supreme Court of the United States say, "the immediate cause of an act, is that which happens without any intervening power to stand as the cause of the injury complained of." Another test is "that a party shall be held liable for those consequences which might have been foreseen and expected as the result of the act, but not for those which he could not have foreseen or expected as the result of the act." Again, another inquiry, to enable the question whether the cause of damage was proximate or remote, is this, "did the cause alleged produce its effect *without* another cause intervening, or was it made operative only through and by means of this intervening cause?" *Parsons on Contracts, p.* 180.

If the facts set forth in the third and fifth prayers of the defendants were found to be true by the jury, then the acts of the defendants were not the proximate cause of the damage sustained, and the plaintiff was not entitled to recover for any damage under the first count. *Pennsylvania R. R. Co. vs. Kerr,* 62 *Penn.,* 364; *Ryan vs. New York Central R. R. Co.,* 35 *N. Y. R.,* 210; 2 *Greenl. Ev.,* sec. 256; *Insurance Co. vs. Tweed,* 7 *Wallace,* 45.

In this case the defendants excavated the street at a distance of nearly forty feet from the plaintiff's house. All the witnesses testified that the excavation *alone,* made at this distance from the plaintiff's house, would have caused no injury to the same. The excavation, without some *intervening cause,* would not have produced any damage. These intervening causes were several. The testimony further showed, that if there had been no house on the corner, the excavation would not have caused any injury to the plaintiff's house. The testimony further showed that the plaintiff's house would not have cracked or inclined out of a plumb line, unless the adjoining house first settled or inclined from a plumb line.

Even this settling or inclination from a plumb line of the corner house would not have produced *any injury to the*

*plaintiff's house,* but for the further fact that the houses were improperly joined or fastened together when constructed. This latter fact caused the corner house to have an intervening power for injury to the plaintiff's house, which it would not have possessed had the two houses been properly constructed according to the testimony, *i. e.* the corner house not attached to the other houses by a peculiar mode of construction which would cause all four houses to settle together.

The defendants should not be held liable for damages resulting along the entire row of houses from an improper mode of construction, which was unknown to them, and which they could not guard against. They should only be liable, if at all, for injuries resulting directly, and as the natural consequence of the excavation.

*George C. Maund* and *William A. Stewart,* for the appellee.

The plaintiff's second prayer was properly granted; it was based upon the third section of the ordinance approved 29th May, 1869, above referred to, which among other things contains the following: "the tunnel or tunnels mentioned and provided for in the preceding section, shall be so constructed and arched as to leave uninjured, and secure the streets under which said tunnels shall be made; and if in constructing the said railroad across or under any of the streets or alleys mentioned in this ordinance, it shall become necessary to take up any pavement on said streets, or excavate the same, then, and in that event, the said Baltimore and Potomac Railroad Company shall restore the surface of said streets to the same condition in which they were before, &c., &c."

This ordinance, it is admitted, was applied for and accepted by the company. If it granted rights to the company, surely the company are bound by the limitations which it prescribes. The rights can only be

exercised subject to the limitations. In granting to the company the right to take up the pavement on any street, or excavate the same, it prescribes and limits the event in which it may be exercised, to wit: "*if it shall become necessary.*" Can it then be doubted that *this necessity* must exist before the right to excavate can arise? Otherwise of what avail is the ordinance? Can the company claim rights under it, and yet repudiate all of its restrictions? Indeed the defendants, by their first and second prayers, (granted by the Court,) admit *the necessity* of *excavation* to be an element of their case, and assume the burden of proving it. These prayers of the defendants assume equally with the prayer of the plaintiff, (to which exception is taken,) that the defendants were liable, unless the evidence showed that the excavation was necessary. The defendants cannot therefore be heard to complain of the Court's action in granting the plaintiff's second prayer, as it simply affirms what is affirmed by their own prayers, which were granted.

But special exception is taken to the granting of the plaintiff's second prayer, "for the reason that there was *no evidence* in the cause that the defendants unnecessarily took up the pavement of Wilson street, and excavated the same." By this, of course, it must be meant, not that evidence upon this point was offered by *neither* party, but that no evidence of the sort was offered by the plaintiff. The record states that " the defendants further offered evidence, tending to show that it was necessary to excavate Wilson street, at and near Madison avenue, in the manner and to the depth to which the excavation was carried."

Now as the *right* to excavate depended in this case, according to the plain meaning of the language of the ordinance, upon the *necessity* for excavation, the burden of proving the necessity was upon the company. The question therefore, upon this appeal, is not the one which has been frequently decided by this Court, as to whether a

prayer was properly granted which was unsupported by any evidence. In fact the record shows there *was* evidence offered by the defendants, but the question is whether a prayer presented to the Court by the plaintiff, and predicated upon such facts, must be rejected, merely because all the evidence with regard to those facts was offered by the defendants—the burden of proof being upon them? *Grove vs. Brien,* 1 *Md.,* 411; *Charleston Ins. Co. vs. Corner,* 2 *Gill,* 426.

The plaintiff's fourth prayer regards the nature of his title to the property injured, as the lessee for a term of ninety-nine years, renewable forever, and correctly states the rule of damages. The jury are directed "by their verdict to give the plaintiff such sum as will compensate him for the injuries done to his said interest in said house." What other rule of damages could be properly prescribed by the Court? *See Sedgwick on Damages,* 149; *Todd vs. Jackson,* 2 *Dutcher,* (*N. J.,*) 525; *Dutro vs. Wilson,* 4 *Ohio St.,* 101.

The third and fifth prayers of the defendants were properly refused. The effort to apply the maxim "*In jure, non remota causa, sed proxima spectatur*" has given rise to much refined and subtile discussion; but among the many cases which have been decided, none can be found in which the alleged cause of injury has been held to be too remote, which is at all analogous to this. *American Law Review for January,* 1870, *p* 201, &c.

In this case the proof shows the house of the plaintiff to have been so compactly attached to the corner house, that it was *physically impossible* for the walls of the one house to be thrown out of a plumb line without similarly affecting the other. If then the defendants, by their negligence, caused the foundation walls of the corner house to sink, the connection between their tortious act, and the injury done to the walls of the plaintiff's house, was not uncertain, vague or indeterminate, or dependent upon some

intermediate thing of an uncertain, vague or indeterminate character ; but the connection between the cause and the effect—between the injury done to the corner house, and to the plaintiff's house was *certain* and *necessary*. And the certainty and necessity of this connection was so obvious that the injury to the plaintiff's house consequent upon the injury to the corner house could have been perceived in advance, not as a thing which *might* happen, but as a thing which *must happen inevitably*. *Marble vs. City of Worcester,* 4 *Gray*, 412 ; *Davis vs. Garrett,* 6 *Bingh.*, 716 ; *Metallic Compression Casting Co. vs. Fitchburg Railroad Co.,* 109 *Mass.*, 277 ; *Tisdale vs. Inhabitants of Norton,* 8 *Metc.*, 388 ; *Siordet vs. Hall and others,* 4 *Bingh.*, 607 ; *Powell vs. Deveny,* 3 *Cush.*, 300 ; *Ingalls vs. Bills, et al.,* 9 *Metc.*, 1 ; *Peters vs. Warren Ins. Co.,* 14 *Peters,* 108, 109, 110 ; *Livie vs. Janson,* 12 *East,* 648 ; *Montoya, et al. vs. London Assurance Co.,* 6 *Exch.*, 451 ; *Nelson, et al. vs. Suffolk In. Co.,* 8 *Cush.*, 477 ; *Montgomery vs. Firemen's Ins. Co.,* 16 *B. Monroe, (K,)* 440 ; *Pennsylvania R. R. Co. vs. Kerr,* 62 *Penn. St.,* 364.

The City of Baltimore had no authority, under the general power vested in it, over streets, to pass the ordinance providing for the construction of the tunnel. *People's Railroad vs. Memphis Railroad,* 10 *Wallace*, 51-52 ; *Davis vs. Mayor, &c. of New York,* 14 *N. Y.*, 506, 515-517 ; *State of New York vs. Mayor, &c. of City of N. Y.,* 3 *Duer,* 119, 130, 144, 145 ; *Milhau vs. Sharp,* 27 *N. Y.*, 611, 618, 621 ; *Philadelphia and Trenton R. R. Co.,* 6 *Wharton,* 25, 44-45 ; *Commonwealth vs. Erie and North East R. R. Co.,* 27 *Penn.,* 351.

The Act of 1853, ch. 194, did not authorize the city to enact the ordinance. And the Act of 1870, ch. 80, did not operate. as a ratification of the ordinance, because no terms of ratification, or purpose to ratify, appear in the Act. *Morris and Essex R. R. Co. vs. City of Newark,* 2 *Stock., (N. J,)* 352, 356, 363, 368, 369 ; *State, ex rel. Mayor, &c. of Balt. vs. Kirkley, et al.,* 29 *Md.*, 85.

In fact the ordinance, which does not in terms make its validity depend on subsequent ratification by the Legislature, *cannot be ratified.* *Cooley on Const. Lim.*, 369, 373, &c.; *State vs. City of Newark*, 3 *Dutch.*, 196, 197; *Schenley, et ux. vs. The Commonwealth*, 36 *Penn.*, 57.

The defendants are liable for the kind of damage done to the property of the plaintiff, even if the ordinance be valid, and even if there were no negligence in doing the work—13 *Wallace*, 166-180. This case censures the extremes to which many Courts have gone in applying the doctrine of *damnum absque injuria.* *Fletcher vs. Auburn and Syracuse Railroad Co.*, 25 *Wend.*, 462; *Protzman vs. The Indianapolis and Cincinnati R. R.*, 9 *Ind.*, 467; *Evansville and Crawfordsville Railroad Co. vs Dick*, 9 *Ind.*, 433; *South Carolina Railroad Co. et al. vs. Steiner, et al.*, 44 *Georgia*, 546.

ALVEY, J., delivered the opinion of the Court.

This was an action on the case instituted by the appellee, the plaintiff below, to recover of the appellants for injuries alleged to have been done to his house, by reason of the construction of a railroad tunnel by the appellants, under the bed of Wilson street, in the City of Baltimore.

The house alleged to have been injured is situated on the southwest side of Madison avenue, and adjoins the house on the corner of that avenue and Wilson street, and stands twenty-four feet and four inches northwest of Wilson street; the two houses being joined together by iron girders and other secure fastenings. These two houses, and two others, forming a row of four, were built by Ogle, the party from whom the appellee sub-leased; and at the time they were built their proprietor had no notice, nor reason to suppose, that Wilson street had been, or would be, dedicated to the use of a railroad tunnel.

The injury alleged to have been done to the house, by the excavation of the street and the construction of the

tunnel, was the weakening the foundation, causing the walls to crack, and a settling out of plumb-line.

Exception was taken at the trial below, by the appellants, to the granting of the second, third and fourth prayers offered by the appellee, and to the refusal to grant the third and fifth prayers offered by the appellants. It is on these prayers that the questions arise to be decided on this appeal.

1. By granting the appellee's second prayer, the jury were instructed, that if they believed from the evidence the appellants, in constructing the tunnel under Wilson street, near the appellee's house, unnecessarily took up the pavement of said street, and excavated the same for the purpose of constructing the tunnel, and, by means of such excavation, damaged the appellee's house, by weakening its foundation and walls, and causing them to crack, and break, then the appellee was entitled to recover.

To this instruction the appellants urge several objections. They insist that it is erroneous, because it entirely leaves out of consideration the authority under which they were acting in constructing the tunnel, and also omits all question of negligence in excavating the street, but makes the right to recover depend upon the fact, whether the appellants unnecessarily took up the pavement of the street, and excavated the same; thus making the liability of the appellants to depend on the necessity of doing an act which was authorized to be done by competent public authority. The instruction was also specially excepted to, upon the ground that there was no evidence in the cause from which the jury could find that the pavement of Wilson street had been unnecessarily taken up, in making the excavation for the tunnel.

With respect to the question whether the pavement was unnecessarily taken up and the street excavated, the ordinance of the city provided that "the tunnel or tunnels mentioned and provided for in the preceding section, shall

be so constructed and arched as to leave uninjured and secure, the streets under which said tunnels shall be made; and if in constructing the said railroad across or under any of the streets or alleys mentioned in this ordinance, it shall become necessary to take up any pavement on said streets, or excavate the same, then, and in that event," the appellants should restore the surface of the streets to the same condition in which they were before. Upon a proper construction of this ordinance, it is very questionable whether the liability of the appellants could be made to depend upon the degree of necessity that might exist for taking up the pavement and excavating the street in making the tunnel. Who is to determine the question of necessity, or the degree of necessity, that would justify the removal of the pavement, and the making the excavation, if not the appellants, to whom the authority was given so to construct their tunnel? But without deciding this question, we are clearly of opinion, upon a careful examination of the record, that there was no evidence upon which the jury could have found that there was no necessity for the removal of the pavement and the excavation of the street. The only evidence upon the subject was that offered by the appellants, which was to the effect that no proper care or precaution had been omitted in the construction of the tunnel at the particular point, purposely to avoid all injury to the houses mentioned. Indeed, the counsel for the appellee do not pretend that they offered any evidence whatever upon the subject, but they insist that, inasmuch as the appellants offered affirmative proof of the fact that all due care was taken, it was competent for the jury not only to discredit or disbelieve the witnesses, but to find a different or a reverse state of facts from that testified to by them, and that without any other evidence upon which to base such finding. The evidence upon this subject was all one way; and to infer that the pavement was unnecessarily removed from the simple fact that wit-

nesses had testified that all proper care had been ob-
served in executing the work, is a mode of reaching conclu-
sions that cannot be indulged.   It was the privilege of the
jury to refuse credit to the appellants' witnesses ; but while
they might think proper to discard the testimony given by
those witnesses, they could have no right to conclude as to
a state of facts, to support which there was no evidence
before them.   Nor can we presume, for a moment, that the
jury did so conclude; but, on the contrary, we should
rather presume that they were governed by the unim-
peached and uncontradicted evidence in the cause.

But, with respect to the other objections to the instruc-
tion, that of ignoring reference to the authority under
which the appellants were acting, and omitting all ques-
tion of negligence in making the excavation for the tun-
nel, they present the question, whether the omissions in
those particulars deprived the appellants of any valid
defence to the appellee's claim to recover.

If there had been negligence in the execution of the
work, resulting in the injury complained of, then, it is
clear, the appellants would be liable ; for the principle is
well settled, that if a party, by carelessness in making an
excavation in his own ground, causes the fall of, or injury
to, a house erected on the land adjoining, he is liable in
damages for the injury.   *Dodd vs. Holme*, 1 *Ad. & Ell.*,
493 ; *Wyatt vs. Harrison*, 3 *B. & Adol.*, 876 ; *Humphries vs.
Brogdon*, 12 *Q. B.*, 739.   Or, if a party acting under law-
ful authority inflict injury, in the manner of executing the
authority, as by unskilfulness or negligence, he is liable
for the consequences.   *Leader vs. Moxon*, 3 *Wilson*, 461 ;
*Jones vs. Bird*, 5 *B. & Ald.*, 837 ; *Lawrence vs. Gt. North.
Rail. Co.*, 16 *Q. B.*, 653 ; *Manly vs. St. Helen's Canal &
Rail. Co.*, 2 *H. & N.*, 840 ; *Add. on Torts*, 727.

In answer to the objection by the appellants to the
instruction, that it omitted all reference to the authority
under which the tunnel was made, it is contended by the

counsel of the appellee, that there was really no proper authority in the appellants to construct the tunnel under the streets of the city ; and if they were right in this position, it would follow as a matter of course that the appellants could have no legal justification for any injury that may have resulted from the construction of that work. But we are of opinion that the appellants had ample authority to tunnel the streets, derived both from the city and State Legislature. The appellants' original charter of 1853, chapter 194, manifestly did not contemplate the use of the streets of the city for the purposes of a tunnel ; but the Mayor and City Council, by ordinance of the 29th of May, 1869, authorized such use, as far as they were competent, and prescribed the manner of its exercise. Whether the Mayor and City Council were competent to confer any such power in the use of the streets, is a question that need not now be decided ; as the Legislature, by the Act of 1870, chapter 80, sanctioned and ratified the authority given by the city ordinance. It is true, this latter Act of 1870, being an amendment of the appellants' original charter, contains no express terms of ratification, but the terms used, in the 7th section, are equivalent to terms of express ratification. The authority given by the city to make the tunnel is recognized, and there is power given to charge additional freights and tolls for its use. This is a clear ratification, or grant of authority, at least by implication ; and it is settled that such authority may be granted by implication. *Springfield vs. Conn. Rail. Co.*, 4 *Cush.*, 63.

The appellants having authority to construct the tunnel, they contend that any damage that the appellee may have suffered to his house, by reason of the excavation of the street, is *damnum absque injuria*, and that no right of recovery exists unless it be shown that the power delegated to the appellants has been illegally or negligently exercised. To this, however, we do not assent.

In this case, the jury have found that the property of the appellee has been damaged to the extent of three thousand dollars; and it would be a reproach to the law, if the Courts were required to determine that it was a case of *damnum absque injuria,* and that there was no redress for such a wrong. There is no reason why the appellee should be required to bear such a loss; it not being for any municipal benefit, but for the benefit of a private railroad corporation, with which he is no more concerned than any other individual of the State. If he could be required to bear this loss of three thousand dollars, he could and would be required to bear the loss, if it were to the full extent of the value of his property; and thus a party might have his house utterly destroyed, and yet be without a remedy to obtain redress. Such is not the state of the law, as applicable to a case like the present.

As against the municipal government, in the careful exercise of its right and power to grade, change and improve the street, there could be no cause of action for any unavoidable injury done; but as against the appellants, a private corporation in nowise connected with the municipal government, obtaining authority to use the streets in an extraordinary manner, for its own private purposes and profit, the case is quite different. As against such party, the owner of a plot of ground, with a building thereon, bounding on a street, is entitled to the natural support which the bed of the street may afford to the foundation of his house. And notwithstanding authority may have been obtained both from the city and State Legislature, to make the extraordinary use of the street, yet that authority must be exercised at the peril of the party to whom it is delegated; and if any injury accrues to private property in the exercise of the power the party producing it must be held liable. If, as we have seen, the injury be produced by the careless or negligent exercise of the authority, then there can be no question of the lia-

bility ; but if due care be exercised, and the injury is the
natural or inevitable result or consequence of the doing
the act authorized to be done, then, in a case like the pre-
sent, the party doing the act and producing the injury,
must indemnify the sufferer.  That there was no negli-
gence or want of care in doing the work, is no answer in
a case like this.  If the injury was the inevitable result of
making the tunnel, then to the extent that the appellee's
property was actually injured, it was substantially taken
for the use of the appellants' road, and, of course, should
be paid for.  It is not to be assumed that either the city
authorities or the Legislature of the State, intended that
the authority delegated by them should be exercised irre-
spective of the rights of private property ; and if it were
clear that they did so intend, it is far from being certain
that such a purpose could be accomplished.  *Gardner vs.
Village of Newburgh,* 2 *John. Ch. Rep.,* 162 ; *Eaton vs.
Boston, Concord & Montreal Rail. Co.,* 51 *N. H.,* 504 ;
*Pumpelly vs. Green Bay Co.,* 13 *Wall.,* 166.

That the excavation of the street for the tunnel was
lawful, and done in a lawful manner at the time, can con-
stitute no defence to this action, if damages actually
resulted from the work.  There are many cases, in which
an act may be perfectly lawful in itself, and will con-
tinue to be so, until damage has been done to the property
or person of another ; but from the moment such damage
arises the act becomes unlawful, and an action is maintain-
able for the injury.  This is the case where a man sinks
mines and makes excavations in his own land, doing no
damage in the first instance to his neighbor, but subse-
quently causing his neighbor's land or his house to slide
down into the excavation.  *Bonomi vs. Backhouse, Ell.
Bl. & Ell.,* 662 ; *Smith vs. Thackerah, L. R.,* 1 *C. P.,*
564 ; *Add. on Torts,* 9.

The case of *Bonomi vs. Backhouse,* just referred to, was
an action for injuries to the plaintiff's house, suffered by

reason of the working of neighboring mines by the defendant. It was not found that there was any negligence or improper working of the mines under the plaintiff's premises, or under the land immediately contiguous thereto, nor that any part of the damage to the plaintiff's property arose from such working; but that the damage arose solely by the defendant's working the mines in other lands not contiguous to the plaintiff's premises, at a distance of 280 yards from them; the earth intervening between the place worked and the foundation of the house gradually giving way, and finally the effect reached the foundation of the house, and caused the injury thereto. The plaintiff was held to be entitled to recover, upon the fullest and most careful consideration, the case being finally decided in the Exchequer Chamber. And Mr. Justice WILLES, in delivering the final judgment of the Court, said: " The question in this case depends upon what is the character of the right; viz: whether the support must be afforded by the neighboring soil itself, or such a portion of it as would be beyond all question sufficient for present and future support, or whether it is competent for the owner to abstract the minerals without liability to an action unless and until actual damage is thereby caused to his neighbor. The most ordinary case of withdrawal of support is in town property, where persons buy small pieces of land, frequently by the yard or foot, and occupy the whole of it with buildings. They generally excavate for cellars, and in all cases make foundations; and, in lieu of support given to their neighbor's land by the natural soil, substitute a wall. We are not aware that it has ever been considered that the mere excavation of the land for this purpose gives a right of action to the adjoining owner and is itself an unlawful act, although it is certain that if damage ensued a right of action would accrue." And he further said that they were not aware that it had ever been supposed that the getting coal or minerals, to what-

ever extent, in a man's own land was an unlawful act, although, if he thereby caused damage to his neighbor, he was undoubtedly responsible for it. The right of action was supposed to arise from the damage, not from the act of the adjoining owner in his own land. And this same case decides, as is also decided in *Rowbotham vs. Wilson*, 8 *El. & B.*, 123, and in *Brown vs. Robins*, 4 *Hurls. & N.*, 186, 102, that the right of support to land from the adjoining soil is a right of property, and not an easement; and hence, if that support be impaired or withdrawn, and injury ensues, the absence of negligence is quite immaterial.

Now, in this case, the owner of the corner house was entitled to such support to the foundation of his building as the bed of the street afforded, before it was excavated for the tunnel—certainly as against the appellants, having no interest in the soil of the street. And if the appellee's house was bound to the corner house, and was lawfully dependent upon it for its stability, then the withdrawal or disturbance of the natural support of the corner house, by the act of the appellants, whereby injury was done to the house of the appellee, such act furnished the latter a cause of action that entitled him to recover for such injury.

And without discussing the question farther, we perceive nothing in the appellee's second prayer, which was granted, that in any manner prejudiced the lawful defences of the appellants, or which furnishes substantial ground for the reversal of the judgment.

It also follows, from what we have said, that the appellee's third prayer could not be objected to by the appellants. It made the right to recover to depend upon the finding of negligence in the construction of the tunnel, or the excavation of the street—an element not essential to the appellee's right to recover. And as to the appellee's fourth prayer, that relates to the measure of damages proper to be allowed. The prayer would seem clearly to be correct, and we do not understand the counsel of the

appellants to make serious objection to it. The jury were instructed to give such damages only as would compensate the appellee for the injuries done to his particular interest in the premises. Nothing less than this would be fair compensation.

2. The appellants, by their third prayer, sought to have the jury instructed by the Court below, that unless the excavation of Wilson street, in the construction of the tunnel, "*was the direct, immediate and proximate cause of the injury*" to the appellee's house, the latter could not recover; and that, upon the finding of certain facts, set out in the prayer, the excavation of the street did not constitute the direct, immediate and proximate cause of the injury complained of, but that the giving way of the walls of the corner house, to which the house of the appellee was bound, was the direct, immediate and proximate cause of the injury; and that such was the case, notwithstanding the giving way of the walls of the corner house was the direct consequence of the excavation.

The appellants' fifth prayer presents substantially the same question, though in somewhat different form.

In the application of the maxim, *In jure non remota causa sed proxima spectatur,* there is always more or less difficulty, and attempts are frequently made to introduce refinements that would not consist with principles of rational justice. The law is a practical science, and Courts do not indulge refinements and subtleties, as to causation, that would defeat the claims of natural justice. They rather adopt the practical rule, that the efficient and predominating cause, in producing a given event or effect, though there may be subordinate and dependent causes in operation, must be looked to in determining the rights and liabilities of the parties concerned.

It is certainly true, that where two or more *independent* causes concur in producing an effect, and it cannot be determined which was the efficient and controlling cause,

or whether, without the concurrence of both, the event would have happened at all, and a particular party is responsible for only the consequences of one of such causes, in such case, a recovery cannot be had, because it cannot be judicially determined that the damage would have been done without such concurrence. *Marble vs. City of Worcester,* 4 *Gray,* 395. But it is equally true, that no wrong-doer ought to be allowed to apportion or qualify his own wrong; and that, as a loss has actually happened whilst his own wrongful act was in force and operation, he ought not to be permitted to set up as a defence, that there was a more immediate cause of the loss, if that cause was put into operation by his own wrongful act. To entitle such party to exemption, he must show not only that the same loss *might* have happened, but that it *must* have happened if the act complained of had not been done. *Davis vs. Garrett,* 6 *Bing.,* 716.

Now, the argument in this case is, that if no house had been built on the corner, bounding on Wilson street, the construction of the tunnel would not have affected the house of the appellee; and if his house had not been attached or bound to the corner house in the manner it was, the settling or inclination from a plumbline of the corner house would not have caused damage to the appellee's house; that the manner in which the two houses were bound or fastened together was not a proper mode of construction. But in answer to this it may be said, that the houses were built before the construction of the tunnel, and that the proprietor was not required to conform to any particular plan or mode of building to meet and obviate the possible danger of such a use of the street. There was nothing illegal in the mode of structure, and, as against the appellants, the appellee was entitled to have the house maintained as it was built. Moreover, it is not shown or pretended that the walls of the house would

have cracked and broken, in the manner they are alleged to have done, but for the construction of the tunnel; and as we have seen, it is not that the damage may by possibility have happened, but it must appear that it would certainly have happened, without the agency of the cause complained of, in order to exonerate the party responsible for the effects produced by such cause.

The principle is well settled, that whoever does a wrongful act is answerable for all the consequences that may ensue in the ordinary and natural course of events, though such consequences be immediately and directly brought about by intervening causes, if those intervening causes were set in motion by the original wrong-doer. *Add. on Torts*, 5. This is clearly illustrated by the leading case of *Scott vs. Shepherd*, 3 *Wilson*, 403. There the defendant threw a lighted squib into the market-house, where persons were engaged in selling articles, and the squib fell upon a ginger-bread stall, and the stall-keeper, to protect himself, threw the squib across the market-house, where it fell upon another stall, and was again thrown off and exploded near the plaintiff, and put out his eye. It was held, that the party who first threw the squib was responsible to the plaintiff for the injury, though it was urged that the plaintiff's eye was not put out by the immediate act of the defendant, but by the immediate act of the party who last threw off the squib. All the injury, said the Chief Justice, was done by the first act of the defendant. That, and all the intervening acts of throwing, were to be considered as one single act. So in the case of *Vandenbaugh vs. Truax*, 4 *Denio*, 464, where the defendant, having had a quarrel with a boy in the street, took up a pickaxe, and pursued the boy, and the latter ran for safety into a wine-shop and upset a cask of wine, it was held that the defendant, the pursuer of the boy, was responsible in damages for the loss of the wine, notwithstanding it was upset by the boy. To these cases many

more might be added, illustrative of the same general principle.

As will be observed, in the cases cited, the injuries complained of were immediately and directly produced by causes or agencies intermediate between the original wrong-doer and the sufferer, but those agencies were put in motion by the original wrong-doer, and hence he was liable. So in this case, if the making the excavation caused a disturbance of the foundation and a fracture of the walls of the corner-house, whereby injury, by reason of the connection between the two houses, was done to the appellee's house, that injury must be imputed to the first cause,—namely, the making the excavation.

This question of remote and proximate cause has been recently considered by this Court, in the cases of *The Annapolis and Elkridge R. R. Co. vs. Gantt,* 39 *Md.,* 115, and *The Phil., Wilm. & Balt. R. Co. vs. Constable,* 39 *Md.,* 149, and the decisions in those cases, though made in reference to a different state of facts, would seem to be quite decisive of the question presented in this case.

Finding no error upon which the judgment should be reversed, we shall affirm the judgment.

*Judgment affirmed.*

(Decided 12th March, 1875.)