# DANA
*v.*
# THE ROCK CREEK RAILWAY COMPANY.

RAILROADS; CHANGE OF GRADE OF STREETS; DAMNUM ABSQUE IN-
JURIA; CONSTITUTIONAL LAW; TAKING OF PRIVATE PROPERTY.

1. Where a railroad company authorized by law to lay its tracks along
a certain street, finding the established grade too steep for its
purposes, lowers the grade under authority granted it by the
municipality, and thereby renders the access of an owner of land
abutting on the street difficult or impossible, the company is lia-
ble to the owner for compensation for the injury. To such a
case the doctrine of *damnum absque injuria* has no application.
2. There is no substantial distinction between the taking of private
property by the actual physical invasion of it, and the depriva-
tion of the owner's use of it by acts that amount to the destruc-
tion or impairment of its use.

No. 506. Submitted December 5, 1895. Decided January 6, 1896.

HEARING on an appeal by the plaintiff from a judgment
on a verdict directed by the court in an action of trespass
on the case. *Reversed.*

The COURT in its opinion stated the case as follows :

This is an action at common law, instituted by the appellant,
George H. Dana, as plaintiff in the Supreme Court of the Dis-
trict of Columbia, to recover damages from the defendant, the
Rock Creek Railway Company, for the cutting down of the
street in front of the plaintiff's land and premises by the rail-
way company for its own purposes, under authority from the
Commissioners of the District of Columbia, to a depth of
twelve feet or upwards, whereby access to the plaintiff's
land was rendered difficult or impossible, and the value of
the land was greatly impaired. The case was tried in the
court below under an agreed statement of facts, and some
additional testimony on behalf of the plaintiff, which was

not controverted. The defendant adduced no testimony further than appeared in the agreed statement of facts. And upon its motion, at the conclusion of the plaintiff's case, the court directed the jury to return a verdict for the defendant, which was accordingly done. To this ruling of the court the plaintiff excepted, and from the judgment thereon has prosecuted this appeal.

The facts as they appear from the record, are these, and there is no controversy in regard to them : Chartered by an act of Congress of June 23, 1888, which prescribed the location which its road at that time was intended to occupy, but which was modified by subsequent enactments, the appellee, the Rock Creek Railway Company, by a further amendment of its charter, approved April 30, 1892 (27 Stat., page 23), was authorized by Congress " To extend a branch road from a point on its line in Cliffbourne tract across the Adams Mill road to Kansas street ; thence along Kansas street to Ontario avenue ; thence along or adjacent to Ontario avenue to the east line of the Zoological Park, on such line as shall be approved by the Commissioners of the District of Columbia." Acting under this authority, the railway company constructed a branch line of its railroad from the main line at the intersection of Kansas street and Cincinnati avenue, along Kansas street, to the neighborhood of Ontario avenue, and thence through a lot, No. 126, to Ontario avenue and along that avenue to the Zoological Park. This construction was during the year 1892.

Prior to the construction of this branch road, Kansas street had been opened and graded by the Commissioners of the District of Columbia, and one half of the cost of such grading had been assessed against the adjacent property, under a system known as " the compulsory permit system." The plaintiff, who, on October 21, 1889, had become the owner of a lot, No. 106, fronting on Kansas street within the line of the improvement and upon the part of that street subsequently occupied by the railway company, duly paid the portion of the assessment levied upon his lot.

In or about May, 1892, the railway company, regarding the existing grade of Kansas street as too steep for the purposes of the road which it had been empowered, as heretofore stated, to construct on that street, applied to the Commissioners of the District of Columbia to establish a new grade on the street, so as to permit the construction and operation of the railroad, in accordance with a profile map and plan submitted to them by the company. The Commissioners approved the map and plan, and authorized the proposed change of grade. Thereupon, about the month of July, 1892, the railway company, under the supervision of the agents of the Commissioners, proceeded to cut down the street to a depth of from twelve to fifteen feet, established the new grade that had been proposed, put down its rails on the street, and erected the trolley poles and strung the wires that were required to operate the railroad by means of electricity, which was the instrumentality chosen for the purpose. The tracks were so constructed as to cover a large part of the width of the street, so that carriages and wagons could not pass or repass without going upon the tracks; and the rails were permitted to project from three to five inches above the surface of the street. But it seems that these tracks have never been used in any manner for the purpose for which they were authorized to be laid, either for the transportation of passengers, or for any other traffic. The work was done in the autumn of 1892.

By the cutting down of the street access to the plaintiff's lot was rendered impossible without cutting down the grade of it to conform to the new grade of the street; and the depreciation in the value of the property thereby is shown by the testimony on behalf of the plaintiff to have amounted to $1,400. The plaintiff protested in vain against the work; and he has received no compensation of any kind either from the District of Columbia or from the railway company.

*Mr. Franklin H. Mackey, Mr. Charles Cowles Tucker* and *Mr. Walter C. Clephane* for the appellant:

1. The statutes under which the defendant company claims exemptions from liability did not authorize a change in the grade of Kansas street to permit of the construction . and operation of the defendant's railroad on said street.

2. An act of Congress authorizing a change of grade for the sole purpose of accommodating the railroad company, would be *ultra vires* unless compensation to the abutting owners were provided for.

Undoubtedly the power given by Congress to the municipality of the District of Columbia to control and repair the streets of Washington is sufficiently extensive to permit it to change the grade of any of its streets as often as in its judgment the public interests require it. *Smith* v. *Corp. of Washington,* 20 How. 135. But the change of grade, which the Commissioners may make, must be, first, *bona fide* change done to promote the public convenience; not as in the case at bar solely for the private convenience of a railroad company; and, second, the change must be made within the limits of its jurisdiction and authority.

This distinction between the act of a municipal corporation, acting for the public benefit, and an act done for the benefit of a private individual or corporation, is made by the Supreme Court of the United States in *Transportation Co.* v. *Chicago,* 99 U. S. 644. The text books also recognize this distinction. 23 Am. & Eng. Ency. 1121, 1122, and cases cited; 2 Dill Mun. Corp. (3d and 4th ed.), sec. 730; Elliott, Roads and Streets, 558; see also *O'Brien* v. *Railroad Co.,* 74 Md. 374.

3. Not only the municipality, but Congress itself, could not authorize a railroad company to change the grade to enable it to lay its tracks, when to do so would destroy or impair access to the land of the abutting owner, unless the owner is compensated; such legislation would be unconstitutional. This right of access is *property* which, when de-

stroyed or impaired, constitutes a taking within the constitutional inhibition. *Prospect Hill Cemetery* v. *District of Columbia*, 5 App. D. C. 497 ; *Story* v. *Railroad Co.*, 90 N. Y. 122 ; Elliott on Roads and Streets, 529. And a *fortiori* it is so when the destruction or improvement is for the benefit of a private corporation. *Bridge Co.* v. *United States*, 105 U. S. 502 ; *Pumpelly* v. *Green Bay Co.*, 13 Wall. 166 ; *Railroad Co.* v. *Fifth Baptist Church*, 108 U. S. 331 ; *Railroad Co.* v. *Fitzgerald*, 2 App. D. C. 501 ; *Railroad Co.* v. *Schurmeir*, 7 Wall. 272 ; *Yates* v. *Milwaukee*, 10 Wall. 504.

A public highway is a mere easement. *Thorr* v. *Railroad Co.*, 25 N. J. Law, 595 ; *Peck* v. *Smith*, 1 Conn. 103, and cases cited ; *Ford* v. *Railroad Co.*, 14 Wis. 670 ; Cooley Con. Lim. 670, 671.

*Peddicord* v. *Railroad Co.*, 34 Md. 463, presents a state of facts quite similar to those existing in this case. In that case while the relief sought was denied, on the grounds that the original charter of the corporation gave it power to cut down the highway ; that this power was a continuing one, and that the property owners upon the original condemnation proceedings, having received damages under an assessment, that compensation was made with reference to the power which the corporation still possessed of subsequently altering the grade of the road, the court said : " But it is another question when the municipality, not requiring the change of grade for the public convenience, may grant to a private corporation a right to lay a railroad track on its streets, and that corporation may undertake to change the grade *for its own advantage*, though it may be with the consent of the municipal corporation. In that case it may be well said that the private corporation is seeking to appropriate the use 'acquired by the public to purposes not within those of its original acquisition, and that the right of the adjacent property holder to compensation for a new use attaches."

4. The acts of the Commissioners of the District of

Columbia were substantially an appropriation of Kansas street to the purposes of an electric railway, without provision being made for compensating the abutting owners. Cooley Const. Lim. 676-7 ; Elliott, Roads and Streets, 159 ; *Imlay* v. *Railroad Co.*, 26 Conn. 249.

The evidence in the case at bar shows that the highway in front of plaintiff's property is covered for its entire width with the tracks of the defendant company, the rails projecting their entire height (as shown by the photographs submitted to the Court) above the level of the street and rendering it practically impassable for vehicles, thus depriving the plaintiff of the principal use for which it was dedicated, to-wit, the passage of vehicles. In its present condition the only vehicles that can pass along the street are the defendant's cars ; but as it has never run any cars, the street is practically closed to abutting land owners.

Even though the defendant was possessed of valid authority to cut down the street adjoining plaintiff's lot, such authority was conditioned upon its laying its tracks " upon an even surface with the pavement of the street or road and that it shall run cars thereon " for the benefit of the public. The evidence shows it has performed neither of these conditions. Authority to cut down a street and lay railroad tracks thereon *even* with the street, and run cars thereon, does not justify the cutting down of the street, and not only failing to run cars, but laying the tracks *above* the level of the street. Elliott on Roads and Streets, 572, and cases cited.

Even though it may be said that the District as a municipality may with impunity change the grade of a street for the public benefit, although in doing so the adjoining property is damaged or depreciated in value, or the enjoyment of the right of access destroyed, because such injury is not a taking, yet there is quite a different case presented when the damage is done by a private corporation for its own benefit under an alleged authority from the District Commissioners.

*Mr. Henry E. Davis* for the appellee :

The damage complained of by the appellant is *damnum absque injuria.*

1. The municipality, the District of Columbia, has power to grade and change the grades of streets as in its judgment proper for the public interest. *Smith* v. *Washington,* 20 How. 135. And the power to improve and grade streets is continuing. 2 Dill. Mun. Corp. (4th ed.), sec. 685, p. 812; Cooley, Const. Lims. 251. And Congress has power to grant to railroads the right to use the streets of the District of Columbia, and, of necessity, the power to prescribe how such shall be made. *Edmonds* v. *Railroad Co.,* 114 U. S. 453.

2. Consequential damages are not a taking of property within the meaning of the principle which requires compensation. 2 Dill. Mun. Corp. (4th ed.), sec. 992, p. 1229; *cf.* secs. 989, 990, pp. 1217 *et seq.*; *Radcliff's Ex'r* v. *Brooklyn,* 4 N. Y. 195. And a railroad company constructing its road as authorized by law is not liable for consequential damages. *Transportation Co.* v. *Chicago,* 99 U. S. 635 ; *O'Brien* v. *Railroad Co.,* 74 Md. 363 ; *Richardson* v. *Railroad Co.,* 25 Vt. 465 ; *Slattern* v. *Railroad Co.,* 29 Iowa, 148; *Porter* v. *Railroad Co.,* 33 Mo. 128 ; *Nottingham* v. *Railroad Co.,* 3 MacA. 517 ; *Carson* v. *Railroad Co.,* 35 Cal. 325. It does not matter in whom the fee of the street is. *Barney* v. *Keokuk,* 94 U. S. 324.

Mr. Justice MORRIS delivered the opinion of the Court:

On behalf of the defendant it was contended in the court below, and it is now contended here, that the plaintiff's case is one of *damnum absque injuria,* as it is called—a remote, incidental, or consequential injury, for which the law gives no redress. From the conceded facts in the case it is clear beyond all possibility of doubt that this conclusion is not just, and if it is not just we cannot think that it is law.

If it is to be held as law, it must be, not because it is the dictate of reason—for it is not—but in consequence of such weight of authority as must be absolutely binding upon us and constituting a rule of construction for our guidance.    We do not find any such weight of authority, or any sufficient authority to justify the conclusion which we are asked to adopt.

In view of the decision of the Supreme Court of the United States in the case of *Smith* v. *Corporation of Washington*, 20 How. 135, notwithstanding that some more recent decisions do not seem to be entirely in accord therewith, it may be conceded that the District of Columbia as a municipality has the right to grade the streets and roads within its limits, and such grades to alter at its pleasure whenever, in the judgment of its Commissioners, it is proper so to do for the public interest, without thereby incurring liability to private owners of adjacent property which may be injured by the change or alteration.    It may also be admitted that Congress has the right to grant to railroad companies the privilege of using the streets and highways of the District of Columbia, and to prescribe the mode in which the use shall be exercised.    But it does not follow from these propositions that a railroad company authorized by law to lay its tracks in a street or road dedicated to the public use and necessary to the owners of adjoining land for the purpose of access to their property and egress therefrom, may so use or occupy such street or road as to render difficult or impossible the access of such owners to their lands, and thereby to destroy or impair the value of the lands, without liability for compensation to the owners.    Nor does it follow that, without such liability, the grade of a street or road once established and satisfactory to the municipality and the public for all their public purposes, may be altered by a railroad company to suit its own exclusive purposes, to the injury of the adjacent property.    On the contrary, we regard the rule as well established and abundantly supported by authority, that there is

a marked distinction in this regard between the liability of a municipality in the construction of its highways for its public purposes and the liability of private corporations using the same highways under legitimate authority for their own private purposes and their own emolument.

It is very true, as contended, that the general purpose of a railway company is to a certain extent a public purpose. The company exercises a public franchise ; and its existence is justified only by the public convenience. ˙ But it does not for that reason cease to be a private corporation ; nor do its tracks, although laid in the public highway, cease to be its own private property. Often in the case of steam railways, the public are wholly excluded from all use of such portions of the highway as are occupied by the tracks ; and even in the case of urban and suburban railroads, operated by horses, cable, or electricity, the railroad companies owning them are usually given the right of way, and to the extent of their use of the tracks, the public are equally excluded from them. In other words, to the extent of the use made of it by the railway company, the highway practically becomes private property of the company. The use is a private use for private emolument, justified only by the fact that it greatly subserves the public convenience.

Now, whatever may be the extent of the authority of the municipality to proceed without liability to the adjacent owners in the use of the public thoroughfares for public purposes, it cannot be that either the municipality itself or the legislative authority can confer rights upon a private corporation, or upon a private individual, in derogation of the public right, and not in pursuance of it, that would justify such private corporation or individual in the invasion of the private rights of others, and constitute an exemption from liability.

In accordance, as it is stated, with the great principle of the common law and of Christian morality, which requires that one should so use one's own property as not to injure

others, the Supreme Court of the United States, in the case of the *Baltimore and Potomac Railroad Co.* v. *Fifth Baptist Church,* 108 U. S. 317, speaking by Mr. Justice FIELD, held that a railroad company had no right to convert even its own private property into a nuisance injurious to adjacent owners and destructive of the value of their property. There is even less warrant for the conversion of the public highway into such a nuisance. For, in the present instance, the railway company appears to have converted the street into a trench, which it does not otherwise use for its own purposes or for any legitimate purpose, and which it does not permit the adjacent owners to use, and from which the adjacent owners are effectually barred.

In the noted case of *Story* v. *New York Elevated Railroad Co.,* 90 N. Y. 122, it was held that when a street, whether the fee be in the municipality, in the public, or in the adjacent owners, has once been taken and dedicated for the purposes of a street, no structure can be authorized upon it which is inconsistent with the continued use thereof as a public open street, without compensation to the adjacent owners. And the same doctrine was reaffirmed in the case of *Mahady* v. *Bushwick Railroad Co.,* 91 N. Y. 148. Assuredly, the construction of such a structure as the New York Elevated Railway could not be more injurious to the adjacent owners, or more inconsistent with the continued use of the street as an open public highway, than would be the absolute destruction of a street as it stood and its conversion into a trench preventing access to the adjacent property, merely for the private benefit of a private corporation.

In the case of *Peddicord* v. *Baltimore, Catonsville and Ellicott's Mills Railroad Co.,* 34 Md. 463, 483, it was said by the Court of Appeals of Maryland:

" As in the cases referred to in 6 Wheaton and 20 Howard, a municipal corporation, having the power to grade streets, does not exhaust its power by one or more acts of grading, but may continue its acts and change the grades, so often as the public convenience may demand, and the

property holder acquires no right to new compensation for every change. But it is another question when the municipality, not requiring the change of grade for the public convenience, may grant to a private corporation a right to lay tracks on its streets, and that corporation may undertake to change the grade for its own advantage, though it may be with the consent of the municipal corporation. In that case it may be well said that the private corporation is seeking to appropriate the use acquired by the public to purposes not within those of its original acquisition, and that the right of the adjacent property holder to compensation for a new use attaches."

In the case of the *Baltimore and Potomac Railroad Co.* v. *Reaney*, 42 Md. 117, 131, which in its circumstances was not unlike the present, it was also said by the Court of Appeals of Maryland :

" The appellants having authority to construct the tunnel, they contend that any damage which the appellee may have suffered to his house, by reason of the excavation of the street, is *damnum absque injuria*, and that no right of recovery exists unless it be shown that the power delegated to the appellants has been illegally or negligently exercised. To this, however, we do not assent.

" In this case, the jury have found that the property of the appellee has been damaged to the extent of three thousand dollars ; and it would be a reproach to the law if the courts were required to determine that it was a case of *damnum absque injuria*, and that there was no redress for such a wrong. There is no reason why the appellee should be required to bear such a loss ; it not being for any municipal benefit, but for the benefit of a private railroad corporation, with which he is no more concerned than any other individual of the State. If he could be required to bear this loss of three thousand dollars, he could and would be required to bear the loss, if it were to the full extent of the value of his property ; and thus a person might have his house utterly destroyed and yet be without a remedy to

obtain redress. Such is not the state of the law as applicable to a case like the present.

" As against the municipal government in the careful exercise of its right and power to grade, change, and improve the street, there could be no cause of action for any unavoidable injury done; but as against the appellant, a private corporation in no wise connected with the municipal government, obtaining authority to use the streets in an extraordinary manner, for its own private purposes and profit, the case is quite different. As against such party, the owner of a plot of ground, with a building thereon, bounding on a street, is entitled to the natural support which the bed of the street may afford to the foundation of his house. And notwithstanding that authority may have been obtained both from the city and the State legislature, to make this extraordinary use of the street, yet that authority must be exercised at the peril of the party to whom it is delegated; and if any injury accrues to private property in the exercise of the power, the party producing it must be held liable. If, as we have seen, the injury be produced by the careless or negligent exercise of the authority, then there can be no question of the liability; but if due care be exercised, and the injury is the natural or inevitable result or consequence of the doing the act authorized to be done, then in a case like the present, the party doing the act and producing the injury must indemnify the sufferer. That there was no negligence or want of care in doing the work is no answer in a case like this. If the injury was the inevitable result of making the tunnel, then, to the extent that the appellee's property was actually injured, it was substantially taken for the use of the appellant's road, and of course should be paid for. It is not to be assumed that either the city authorities or the legislature of the State intended that the authority delegated by them should be exercised irrespective of the rights of private property; and if it were clear that they did so intend, it is far from being certain that such a purpose could be accomplished. *Gardner* v. *Village of Newburg*, 2 John.

Chan. Rep. 162 ; *Eaton* v. *Boston, Concord & Montreal Railroad Co.,* 51 N. H. 504; *Pumpelly* v. *Green Bay Co.,* 13 Wall. 166."

The case of *O'Brien* v. *Baltimore Belt Railroad Company,* 74 Md. 363, cited by the appellee to the contrary, is not antagonistic to the position stated in the previous case. There an injunction was refused to the owner of an adjacent lot against a railroad company authorized by the public authority to make an open cut in the bed of a street in order to reach a tunnel which it had also been authorized to construct. But, as the court remarked in its opinion in that case, it was not charged or in any way claimed that the plaintiff would be deprived of his property or seriously hindered in his right of access to it from the street, by the making of the cut, which seems to have been on the side of the street more distant from the complainant's property ; and it appeared that, after the cut was made, there would still remain, in front of the complainant's property, a width of street about forty-one feet, which would give him ample opportunity for access to the property. Yet the court there added :

" In many cases, the damage suffered from such changes in the grade of streets is very serious, and may even considerably affect the value of property ; but yet, if the work is done with due care to avoid unnecessary injury to the abutting property, and there be no physical invasion thereof, the damage suffered is without remedy. In such cases, the work having been done by legal authority and for municipal purposes, it is said the private damage and annoyance occasioned thereby must be suffered in order to advance the public good. *Baltimore and Potomac Railroad Co.* v. *Reaney,* 42 Md. 117 ; *Mayor, &c., of Cumberland,* v. *Wilson,* 50 Md. 138 ; *Transportation Co.* v. *City of Chicago,* 99 U. S. 635 ; *Vanderlip* v. *City of Grand Rapids,* 73 Mich. 522 ; 2 Dillon on Municipal Corporations (3d ed.), pages 989 and 990; Cooley's Constitutional Limitations (6th ed.), pages 666, 667 and 668. But this reasoning, applicable to

the case of the change of grades and the improvement of streets for municipal purposes, does not apply in the case of a grant of power to change the grade of and occupy the street with steam railroad tracks by a railroad company having no connection with the municipal government. In such case a different principle applies, and the rights of individual property owners are in no respect subordinated to the rights of the railroad company. While the right in the State to grant the power to a railroad company to occupy the street is unquestionable, by virtue of its power to control all the public highways of the State, the adjoining lot owners are not without redress for any substantial injury sustained to their property rights, that may be produced by reason of the construction or operation of the railroad in the street. As said by the Supreme Court of the United States in *Balt. & Potomac Railroad Co.* v. *Fifth Baptist Church,* 108 U. S. 317, 331, when speaking of legislative authority to a railroad company to bring its tracks within the municipal limits of Washington City : ' Grants of privileges or powers to corporate bodies, like those in question, confer no license to use them in disregard of the private rights of others, and with immunity for their invasion. The great principle of the common law, which is equally the teaching of Christian morality, so to use one's property as not to injure others, forbids any other application or use of the rights and powers conferred.' "

In the case of the *Baltimore and Potomac Railroad Co.* v. *Fifth Baptist Church,* already cited, the Supreme Court of the United States said :

" It admits indeed of grave doubt whether Congress could authorize the company to occupy and use any premises within the city limits in a way which would subject others to physical discomfort and annoyance in the quiet use and enjoyment of their property, and at the same time exempt the company from the liability to suit for damages or compensation, to which individuals acting without such authority would be subject under like circumstances. With-

out expressing any opinion on this point, it is sufficient to observe that such authority would not justify an invasion of other's property to an extent which would amount to an entire deprivation of its use and enjoyment without compensation to the owner. * * * The acts that a legislature may authorize, which, without such authorization would constitute nuisances, are those which affect public highways or public streams, in which the public have an interest and over which the public have control. The legislative authorization exempts only from liability to suits, civil or criminal, at the instance of the State; it does not affect any claim of a private citizen for damages for any special inconvenience and discomfort not experienced by the public at large."

To the same effect are the cases of *Railroad Co.* v. *Schurmeir*, 7 Wall. 289, and *Yates* v. *Milwaukee*, 10 Wall. 504; *Pumpelly* v. *Green Bay Company*, 13 Wall. 166; *Bridge Co.* v. *United States*, 105 U. S. 502; *Chicago* v. *Taylor*, 125 U. S. 161; *Hot Springs Railroad Co.* v. *Williamson*, 136 U. S. 121; *Shepherd* v. *Balto. & Ohio Railroad Co.*, 130 U. S. 426; *United States* v. *Alexander*, 148 U. S. 186; *United States* v. *Truesdell*, 148 U. S. 196; *Great Falls Manufacturing Co.* v. *Garland*, 124 U. S. 581; *Ford* v. *Chicago and Northwestern Railroad Co.*, 14 Wis. 670; Cooley's Constitutional Limitations, ch. 15, p. 549, and cases cited in the notes.

It is true that in several of these cases damages were recovered under constitutional guarantees that private property should neither be taken nor damaged without just compensation, or under statutory enactments containing similar provisions; but under our reading of our Federal Constitution we are unable to perceive any reasonable or substantial distinction between the taking of private property by the actual physical invasion of it and the deprivation of the owner's use of it by acts that amount to the destruction or impairment of that use. The construction of an impassable barrier around property by which the owner's access to it would

be destroyed, would, to our common understanding, be no less a taking of it in the sense of our Constitution than would be the owner's expulsion from the premises.    In this regard the emphatic language of Mr. Justice MILLER, speaking for the Supreme Court of the United States in the case of *Pumpelly* v. *Green Bay Company*, *supra*, is the expression of common sense, common justice, and common honesty; and as such, although at one time criticised and sought to be restricted and qualified, has received the repeated approval of the same high tribunal in its latest utterances.    *United States* v. *Alexander*, 148 U. S. 186.

Numerous cases are cited on behalf of the appellee to show that a railroad company exercises public functions, a proposition which cannot well be denied; but it is not apparent why it should follow therefrom that it is exempt from liability to private individuals for the taking of their property, or for injury thereto amounting to a deprivation of its use and enjoyment.    It is the very fact that they do exercise public functions that makes railroad companies amenable to the constitutional inhibition that they must not take private property without due compensation for it.    For their invasion of private property, if we consider them as private persons merely, would be cognizable as a trespass under another head of the law.

We have been given to understand that the learned justice, before whom this cause was tried in the court below, felt himself bound by the decision of the Supreme Court of the District of Columbia, in the case of *Nottingham* v. *Baltimore and Potomac Railroad Co.*, 3 MacA. 577; and that case undoubtedly supports the appellee's contention.    There the defendant railroad company had been authorized by various acts of Congress to extend its road into the city of Washington, and for that purpose to change the grade of certain streets over which it was empowered to pass.    Under this authority it constructed its road upon a street in front of the plaintiff's lot, at an elevation of two feet above the original grade, but in conformity with a new grade then

established for the convenience of the railroad. By the embankment thus created, it was alleged that the plaintiff's access to his lot had been rendered difficult, and that the water which otherwise would have flowed off in a different direction, was caused to overflow upon the plaintiff's lot. The Supreme Court of the District, in General Term, reversing the decision of the Chief Justice of that court, before whom the case had been tried at the special term, held that the plaintiff, whose pleadings, however, seem to have been quite faulty, was not entitled to recover, on the ground, 1st, that no one is liable to another in damages for doing with his own whatever he is permitted to do by law ; and, 2d, that where the injury is the result of a common nuisance, it is not ground of action for damages unless the plaintiff can prove some injury to himself of a character different in kind from that common injury which he may have sustained with the rest of the public by reason of such nuisance.

It may be that, in view of the faulty character of the plaintiff's declaration, as well as proofs, to which attention is called in the opinion, but the nature of which we are unable from that opinion to determine, the decision of the General Term was right ; and to the two grounds given for the decision, standing by themselves, as abstract propositions of law, it may be that no exception can be taken. But, however this may be, we are unable to acquiesce in the application made by the court of the principles there laid down to the general case stated in the opinion. It is in plain antagonism to the law as laid down by the Supreme Court of the United States in the case of the *Railroad Co.* v. *Fifth Baptist Church, supra,* and to all the other cases hereinbefore cited, and we are compelled to disregard it.

The doctrine of *damnum absque injuria,* relied upon by the appellee, is not one that should be extended by construction beyond its legitimate and reasonable scope. There are many inconveniences and annoyances, which, as members of a common society and participants in a common civilization, we are called upon individually to endure for the

common good.   When they are too remote, indirect, or intangible to be made the basis of pecuniary compensation, they fall into the category of *damnum absque injuria.*   But it would be destructive of all private right and a disgrace to our jurisprudence to hold that in that category are included such acts as are complained of in this case.   We do not think that either upon principle or authority we are required so to hold.

We are of opinion that the judgment of the court below was erroneous, and that *it should be reversed, with costs, and the cause remanded to that court for a new trial.   And it is so ordered.*