# THE CONSOLIDATED GAS CO. *vs.* JAMES GETTY.

*Explosion of Gas in Vacant House—Failure of Gas Company to Find
Leak After Notice—Sufficiency of Evidence of Negligence—Measure
of Damages—Negligence of Third Person.*

The defendant gas company removed the meter from plaintiff's unoccupied house and shut off the gas by turning the stop cock in the "riser." About a month afterwards the people living in the adjoining house noticed a strong odor of escaping gas and made an investigation which failed to reveal its source.   The gas company was notified by them of the existence of a leak somewhere and sent an inspector to their house who found no leak there ; he approached the cellar window of plaintiff's house, where there was a broken pane of glass, and examined the neighboring lamp posts and reported to the company that he could dis-

cover no leak. Soon after the inspector's visit, the odor of gas continuing to be strongly perceptible even on the street, some of the people in the adjoining house called the attention of a policeman to it and with him began an investigation. The policeman took a lighted candle in the evening and went into an alley alongside of plaintiff's house; when the candle was brought near a hole through which ran the pipe which carried the gas from the basement of plaintiff's house to the floor above there was instantly an explosion of gas which damaged the building. It was afterwards discovered that the stop cock had been wrenched from the service pipe in the cellar, but when or how or by whom it had been done did not appear. In an action to recover damages, *held*,

1st. That the question whether the defendant had used reasonable diligence to locate the leak after being notified thereof was a question for the jury, and there was legally sufficient evidence in the case to charge the defendant with negligence.

2nd. That the failure of the plaintiff to inspect his house for a month after the gas had been turned off by the defendant was not contributory negligence.

3rd. That the escape of gas was the efficient and proximate cause of the explosion and not the lighted candle which was brought into contact with it, and even if the policeman was negligent in his use of the candle that negligence cannot be imputed to the plaintiff for the policeman was not his agent.

In an action to recover for injury to a house from an explosion of gas caused by the negligence of the gas company, the measure of damages is the cost of restoring the house to the condition it was in before the explosion.

When defendant's negligence has injured another in person or property, the contributory negligence which will defeat the right to recover is the negligence of the injured party himself or of some other person whose negligence may be legally imputed to him; the negligence of a third person who is a stranger to the injured one cannot be imputed to the latter.

Appeal from the Court of Common Pleas, (HARLAN C. J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*D. K. Este Fisher* and *Jno. Wm. Marshall* (with whom was *W. Cabell Bruce* on the brief) for the appellant.

*John Hinkley*, for the appellee.

McSHERRY, C. J., delivered the opinion of the Court.

The facts of this case are few and the legal questions in-volved are all raised on the prayers.

On the night of November the twenty-fifth, 1900, house No. 517 situated on West Lombard street, in the city of Baltimore, and owned by the appellee, was badly damaged by an explo-sion of artificial illuminating gas in the cellar. The house was unoccupied at the time and had been vacant for a considerable period and was in the hands of a real estate agent for sale. On the twenty-ninth of the preceding month the gas meter had been removed from the premises by the employees of the appellant company at the request of the owner, and the flow of gas was then turned off by closing a stop-cock in the riser that joined the service pipe to the meter. After the explosion had occurred it was discovered that this riser had been wrenched from the service pipe, but when or how or by whom it had been done does not appear, though some conjecture is to be found in the record that a thief had entered the premises and torn it away to secure the brass stop-cock attached thereto. Five or six days before the explosion, Mrs. Clark, who occupied the adjoining premises, No. 519, as a boarding house, and many of her boarders, were alarmed because of the strong odor of gas throughout *that* building; and they all supposed there was a leak there. A policeman was called late one evening and he opened the cellar of No. 519 and Mrs. Clark requested him to notify the appellant company of the situation. The following morning the same odor, though not so strong, was still apparent and Mrs. Clark requested one of her boarders, as he went down town, also to notify the gas company. One or the other of those notices certainly reached the company, because on the morning after the policeman had been asked to inform the appellant of the escape of gas, an agent or inspector of the company called at No. 519 to locate the leak and to close it. He made an inspection of premises No. 519. He went into the cellar and smelled at the meter and at all the joints of the pipe; he went to the floor above and smelled in the closets and elsewhere, but declared that he

could not detect the odor of gas anywhere. Mrs. Clark, however, at that very time stated to him and she so testified, that she could smell the gas especially in the closets which were in the east wall of her house, and therefore immediately against the west wall of the appellee's house. The inspector failing to find any odor of gas went to the next house on the west, which was still further away from the house of the appellee than was Mrs. Clark's, and made inquiry whether gas was escaping there, and being told that none was noticed he went to a near-by lamp-post, climbed it and tried to discover whether the leak came from that source. Not discovering any leak there he crossed the street and tried another lamp-post with the same result. He then noticed that a pane of glass in one of the cellar windows of the appellee's house was broken, though the wire screen was intact. He went to that opening and smelled there but found no odor of gas. He then reported to his superior that he had failed to discover any leak. He requested Mrs. Clark to notify the company if the presence of escaping gas again manifested itself. It was also shown that the smell of gas was distinctly observable in the street when one stood on the front steps of Mrs. Clark's house which immediately adjoined the steps of the appellee's house. Notwithstanding the inability of the inspector to discover the presence of escaping gas, the smell still continued and was perceptible on the street. On Sunday night, November the twenty-fifth, the odor was strong on the street. Two of the boarders at Mrs. Clark's house called the attention of a policeman to the fact and he proceeded to make an investigation. He went into an alley on the east side of the appellee's house and examined all the doors and windows and found them intact on the ground floor and on the second-story. He then returned, and the same two boarders procured a candle and suggested that the policeman continue his investigation. The candle was lighted and the three men re-entered the alley and when they reached a point where the pipe which supplied the gas to the upper floor was carried through the outer wall and up its exterior face from the base-

ment to the story above, they paused, and the policeman with the lighted candle in his hand looked into the hole through which the pipe was run, and instantly the gas escaping from the cellar came in contact with the lighted candle and the explosion followed. The damage done was extensive. When the employees of the gas company reached the scene and entered the cellar they found the gas pouring out of the service-pipe into the cellar at the point where the riser had been wrenched off. They temporarily closed the leak with putty and the next day put a cap on the end of the pipe. This suit was brought to recover the damages sustained by the appellee by reason of the explosion occasioned in the way just explained.

Out of the above facts the four legal questions which are presented for decision arise; and they are these. *First*: Was there any legally sufficient evidence in the case to show that the appellant company had been guilty of negligence? This question is presented by the appellant's *first* prayer in the second bill of exceptions. The same prayer had been previously offered at the conclusion of the plaintiff's case and had been rejected, whereupon the first exception was reserved. Inasmuch, however, as the appellant then proceeded to offer evidence the first exception must, as has often been held, be treated as waived. The *second* question arises on the rejection of the appellant's *third* prayer and on the granting of the appellee's *second* instruction. By the latter the jury were told that there was no legally sufficient evidence of the want of due care on the part of the appellee contributing to the happening of the explosion. The appellant's rejected *third* prayer left it to the jury to find whether there was such contributory negligence. The *third* question as presented by the appellant's *fourth* prayer and the appellee's *third* instruction as modified by the trial Court raises the inquiry of proximate and remote cause—as to whether the escape of gas or the candle carried by the policeman was the proximate cause of the explosion. The *fourth* question relates to the measure of damages laid down in the appellee's *fifth* instruction. These questions will be disposed of in the order named.

*First:* Was there legally sufficient evidence to go to the jury to charge the appellant company with actionable negligence? There was no negligence in the act of shutting off the gas by merely turning the stop-cock in the riser; *Brady v. Gas Co.*, 85 Md. 642, and the whole question comes down to this; when the company confessedly received notice that there was a serious leak in the vicinity of the house that was afterwards damaged, did it use due and reasonable diligence to locate it? If it did not, then it was guilty of negligence; if it did then it was not guilty of negligence. Whether it did or did not use due and reasonable diligence to locate the leak was a question of fact for the jury in the circumstances of this case, if there was any evidence before them tending to prove the negative. The instruction granted at the instance of the appellant and numbered *two* was framed upon the distinct theory that the appellant was bound to use due and reasonable diligence to locate the leak and therefore implicitly conceded that there was some evidence from which a jury might properly find the absence of such care and diligence. But aside from this, it was fairly for the jury to say, as a matter of fact, and, therefore, not for the Court to determine as a matter of law, whether an inspection which failed to discover what other persons in the same situation as was the inspector, were aware of, was a due and reasonable inspection. There was obviously and notoriously an escape of gas in large quantities both before and after the company's inspection of Mrs. Clark's premises was made. About that there can be no doubt. The company knew that it was claimed there was a leak in No. 519—the house occupied by Mrs. Clark. It is not now pretended that the gas came from any other place than the appellee's house. Though the odor could be plainly noticed on the pavement the inspector failed to detect it even when he placed his face to the broken pane of glass in the cellar window. Why? Was it because there was no escaping gas in the cellar? The Court could not say that, because if anything is plain and free from doubt in this case, it is indisputable that in the cellar of the appellee's house was just the

place and the only place where the gas was escaping.   Then why did the inspector fail to discover it ?   That was a question obviously for the jury to answer.   In answering it, it was for them to say whether the inspection as made was a reasonable one or not ; and it would have been error had the Court taken the finding of that fact away from them.

The *second* question relates to contributory negligence. The contention is that the failure of the appellee and the real estate agent in whose hands the house was put for sale to inspect the premises between October the twenty-ninth, the day the meter was removed, and November the twenty-fifth, the day of the explosion, was contributory negligence barring the right to recover, because had such inspection been made the escape of the gas "would have been discovered in time to have averted the explosion."   But the appellee and his agent were under no obligation to assume or anticipate that there would be an escape of gas, and there was consequently no duty encumbent upon them to see that there was in fact no leak.   There was, therefore, no negligence in their not doing that which it was not incumbent on them to do.   How often would they be required to make such an inspection in order to repel the charge of contributory negligence ?   Until a definite answer can be given to that question it cannot be said that a failure to inspect between the dates named was any evidence of such negligence ; and the Court was clearly right in granting the appellee's *second* instruction and in rejecting the appellant's *third* prayer.

Now, as to the *third* question.  The appellant's *fourth* prayer asserts the proposition that even though the company was negligent in not finding the leak after being notified that it existed and was therefore responsible for the escape of the gas, still it is not answerable if the explosion occurred in consequence of a lighted candle having been brought by the policeman in contact with the gas.   And this is supposed to be so on two grounds, viz.: *first*, because, the escape of gas was not, but the lighted candle was, the proximate cause of the explosion ; *secondly*, because, it was contributory negligence on the part

of the policeman to carry a candle where the gas was escaping, with which contributory negligence the appellee was chargeable. The appellee's *third* instruction as modified by the Court asserts the converse of the second proposition.

We need not go into a discussion of the abstruse and subtle question as to what is and what is not a proximate or a remote cause. As a mere metaphysical inquiry it presents a wide and interesting field for speculation and theory, but we are not called on to enter that field in this controversy. "The law is a practical science," said this Court in *B. & Po. R. R. Co.* v. *Reaney*, 42 Md. 136, "and Courts do not indulge refinements and subtleties, as to causation, that would defeat the claims of natural justice. They rather adopt the practical rule, that the efficient and predominating cause, in producing a given event or effect, though there may be subordinate and dependent causes in operation, must be looked to in determining the rights and liabilities of the parties concerned.* * * But it is equally true, that no wrong doer ought to be allowed to apportion or qualify his own wrong; and that, as a loss has actually happened whilst his own wrongful act was in force and operation, he ought not to be permitted to set up as a defense, that there was a more immediate cause of the loss, if that cause was put into operation by his own wrongful act." In the last analysis much must depend on the facts of each particular case. 7 *Am. & Eng. Ency. L.*, (2nd ed.) 381. That the escape of the gas was the efficient cause of the explosion cannot reasonably be disputed. If there had been no escape of gas there could have been no explosion. The escape of gas if negligent was a wrongful act and it occasioned the use of the candle—it was the wrongful act which put into operation the other cause, and was consequently the efficient and predominant cause of the injury.

In most of the cases where negligence is the ground of action the question of proximate and remote cause has relation to and is involved in the inquiry whether there was contributory negligence. If the escape of the gas was due to negligence on the part of the appellant then the appellant would be

liable unless relieved by the contributory negligence of the appellee or of some third party.   It has long been a settled doctrine of the common law that for injuries negligently inflicted upon one person by another, there can be no recovery of damages if the injured person by his own negligence or by the negligence of another legally imputable to him proximately contributed to the injury.   This doctrine, which was obviously borrowed from the Roman law, was, it is said, first clearly and distinctly applied by LORD ELLENBOROUGH in *Butterfield* v. *Forrester*, 10 East, 60; and numerous illustrations of its subsequent application are to be found in our own Reports. It must, however, be observed that the contributory negligence which will defeat the right to recover is the negligence either of the injured party himself or of some other individual whose negligence may be legally imputable to the injured party.   Now, there is no pretence that the appellee was guilty of negligence in taking the lighted candle to the place where the explosion occurred, because he was not there ; and it comes to the question whether, conceding that the policeman was negligent, that negligence can be imputed to the appellee so as to defeat his action.   The police officer was not the agent, the servant or the employee of the appellee and, of course, therefore, the appellee was not in any way responsible for his actions.   The negligence of a third party who is an entire stranger to the individual injured cannot legally be imputed to the latter.   *L. N. A. & C. R. Co.* v. *Lucas*, 119 Ind. 583; s. c. 6 L. R. A. 193; *Henry* v. *Dennis*, 93 Ind. 455; *Lynch* v. *Nurding*, 1 Q. B. 29; *Illidge* v. *Goodwin*, 5 Car. & P. 190; *Northern Penna. R. Co.* v. *Mahoney*, 57 Pa. 192; *J. T. Key West R. Co.* v. *P. L. T. & M. Co.*, 27 Fla. 157; s. c. 17 L. R. A. 33, *with copious notes*.   There was no error in granting the appellant's *third* instruction as modified or in rejecting the appellant's *fourth* prayer.

The *fourth* and last question relates to the measure of damages.   The Court instructed the jury that the measure of damages was what would have been the fair and reasonable cost of restoring the house to its condition as it stood before

the explosion.   This was clearly right.   *Brown* v. *Werner*, 40 Md. 15.

Finding no errors in the rulings excepted to the judgment will be affirmed.

> *Judgment affirmed with costs above and below.*

(Decided March 31st, 1903.)