# THOMAS MULLAN

*vs.*

# CHARLES T. BELBIN.

*Pleading*: *actions of case and trespass; damages; destruction of
shop; loss of tools and profits of business.   Negligence:
excavations near building; fact of building being old,
no defense.   Condemnation proceedings: when
title passes; mere institution of—, does
not affect title.   Practice: order of
giving evidence; discre-
tion of court.*

As a general rule, the measure of damages in actions for
injuries to real property is the difference in value before and
after the injury.                                   p. 319

In an action for damages for the destruction of a building
in which tools and a toolshop were installed, the evidence of a
mechanic who for 25 years had been engaged in making and
in installing such machinery is admissible to show the cost of
repairing and resetting the machinery.               p. 320

In such an action, the loss of profit in a trade or business may
be recovered, if it be the direct loss of the defendant's wrongful
act and is proven with sufficient certainty.        pp. 320-321

The order of testimony and the order in which witnesses
should be examined are in the discretion of the trial court, and
from its ruling on such matters no appeal will lie.    p. 321

Condemnation proceedings can not operate to transfer the
title until the amount awarded or assessed is paid or tendered.
                                                     p. 323

Such proceedings can afford no defense to any action to re-
cover damages claimed by the owner for injuries to the prop-
erty incurred after the institution of the proceedings, but when
the transfer of title has not been made, even by a tender of the
award.                                              p. 323

The fact that the walls of a building near which excavations are being made were cracked and weak, still leaves upon the party the obligation of exercising due care, and does not free him from responsibility for injury caused by his negligence.

p. 324

In a declaration in a suit for damages for the fall of the plaintiff's building, owing to the carelessness of the defendant in operating a steam shovel in excavating adjacent thereto, a count that the defendant broke and entered the plaintiff's land, etc., "by negligently, wantonly and maliciously operating a steam shovel so that it struck the wall of the plaintiff's property and caused said wall to fall, whereby * * *," etc., is not demurrable.                              pp. 327-328

In such an action the fact that the defendant followed instructions of the City Engineer, and that he exercised reasonable care in the use of the shovel, is no defense.          p. 326

An action in *case* is a concurrent remedy with trespass in all cases where the injury is occasioned by the carelessness and negligence of the defendant, notwithstanding the act is immediate, so long as it is not willful, providing the gist of the action is not the direct consequence of the trespass itself, but the consequential damages resulting therefrom.          p. 328

Under a count of trespass the plaintiff may recover such damages as were the direct and natural consequences of the act complained of.                              p. 328

*Decided February 15th, 1917.*

Appeal from the Baltimore City Court. (HEUISLER, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, URNER and STOCKBRIDGE, JJ.

*James Morfit Mullen* (with whom was *Alfred J. O'Ferrall* on the brief), for the appellant.

*Clifton S. Brown* and *James Clarke Murphy,* for the appellee.

THOMAS, J., delivered the opinion of the Court.

In June, 1915, the appellee, Charles T. Belbin, owned the leasehold interest in the property in Baltimore City known as 517 East Cross street, which he purchased in 1890, subject to a ground rent of $90.00. The lot fronted about forty feet on the south side of Cross street and extended back about eighty feet, and was improved by a brick building in which the appellee conducted the business of a shipsmith or "ship-blacksmith." The building was on the northeast corner of the lot, with a front on Cross street of about thirty-seven feet, and a depth, along the east line of the lot, of about fifty-seven feet. A part of the lot and improvements were within the lines of one of the sections of the street or highway known as the Key Highway, which the Mayor and City Council of Baltimore was engaged in constructing, but at the time of the occurrences which gave rise to this suit the City had not acquired title to that part of the appellee's property within the bed of the proposed highway.

The City entered into a contract with the Consolidated Engineering Company, a corporation, for the construction of the section of the Key Highway on which the appellee's property was located, and the appellant, Thomas Mullan, contracted with the Engineering Company to do "the excavation work required under" the contract between the company and the City. While the appellant was engaged in excavating the bed of Key Highway along and adjoining the east side of appellee's lot and building, and using a steam shovel for that purpose, the foundation of the building gave way and the walls and roof of the building fell. The appellee sued the Mayor and City Council of Baltimore, the Consolidated Engineering Company and the subcontractor to recover damages for the injuries to his building, tools, machinery, stock in trade and business, and this appeal is from a judgment in his favor against Thomas Mullan, the sub-contractor, for $1,650.00.

The record brings up for review the rulings of the lower Court on the demurrer to the declaration, and on the evidence and prayers embraced in nineteen bills of exceptions.

The plaintiff produced evidence to show that in constructing the street or highway adjoining the lot and building of the plaintiff, a part of which were, as we have said, within the lines of the street, the earth was removed to the depth of four or five feet; that the work was done by Thomas Mullan, the subcontractor, and his employees, who used a steam shovel in making the excavation. The witness, George A. Simms, who was working for the subcontractor, in describing how the steam shovel worked and what occurred at the time the walls and building collapsed, testified, "That when the bucket (the bucket of the steam shovel) was swinging around it would get right to the building. That he seen the wall fall down. That he saw the operation of the scoop and bucket. Q. What happened to the bucket? A. Nothing, only digging the dirt from around alongside of the wall and worked in front of the wall. Q. Worked what? A. Nothing, only digged the dirt from alongside the wall. Q. How close to it? A. Right up to the wall. Q. What do you mean by 'right up to the wall?' A. Like if you put your hand up against something. Q. Do you mean it touched the wall? A. Of course. Q. Do you mean it touched the wall? A. Yes, sir. Q. Where abouts? A. Alongside of it." He was then asked by the Court: "Did the bucket strike the wall?" and he replied: "Yes, sir; it struck against the side of the wall. I don't know whether it struck under it or how high up, but I know it struck up against the side of the wall and was working close to it." He further testified that nothing happened after the bucket struck the side of the wall until the superintendent, the walking boss of the defendant, Mullan, gave the order, "To go ahead and let the—(meaning the building) fall down," and that after he said that "the man swung the shovel around and began to dig again and the wall fell down;" that the shovel hit the wall again.

Charles W. Ruark, who was at the plaintiff's building on June 12th a short time "before the accident" and called to see the plaintiff on business, said that he "saw the shovel very near the wall. He walked into the blacksmith's shop, and had a conversation with Mr. Belbin; after that he went home and did not see the operation of the shovel again. Every time it came up with a dipper full of earth it was about six inches from the wall, and he could see the bottom of the foundation. The earth was falling from the foundation gradually, and he could see the brick. He judges the excavation at that time was about four or four and one-half feet deep at the place where he saw the shovel. James I. Cook, another witness produced by the plaintiff, testified that he was a "stationary engineer;" that he lived at 458 Cross street, and that on June 12th, 1915, he was at the corner of Cross street and Key Highway looking at the steam shovel "digging alongside of Mr. Belbin's wall; that they were jam up to it, showing the foundation, foundation bricks, could not get any closer. That he was looking at them for a while, and he went and set inside the building, in the door on the Cross street side. While he was sitting there an old captain —I think it was Captain Lee—hollered that he wanted the witness to come out, and the witness came out, and when he ran out there the shovel was hung under the foundation of the wall," and that "When they lowered the shovel and moved the shovel, the wall came down." G. Arthur Belbin, the plaintiff's son, who was working for his father at the time, testified that he saw the steam shovel working, and the bucket "up against the building" about five or ten minutes "before the building was knocked down;" that "He had time to run up stairs and bring his father down." The plaintiff and his son stated that the plaintiff's tools, machinery and stock in trade in the building were injured by the falling of the walls and roof of the building. The plaintiff testified that there were at least "a half a dozen jobs" that he lost in consequence of the injury to his building, but he could only

recall two of them, from which, he said, he would have realized a profit of $35.00.

The defendant offered evidence tending to show that in moving the earth within the lines of the proposed highway adjoining the plaintiff's property the bucket of the steam shovel did not go nearer than three feet from the wall of the plaintiff's building at the top of the excavation, and that the bottom of the excavation was nine feet from the plaintiff's property; that the east wall of the plaintiff's building was cracked in several places and was weak. Joseph T. Fallon, who was superintendent for Mr. Mullan and had charge of the work, testified that he had a conversation with the plaintiff on the morning before the wall fell down; that he asked the plaintiff if he had any weight against the wall, and that when he replied that he had, the witness advised him to move it, as there were two or three cracks in the wall and the wall was weak. He further testified that the plaintiff had a great deal of very heavy material against the wall, such as "niggerheads" and "a lot of iron and stuff."

The first, second, fourth and fifth exceptions were abandoned by the appellant. James J. O'Connor, a witness produced by the plaintiff, and an experienced builder of warehouses and dwelling houses, testified that in April before the accident he examined the plaintiff's property at the request of the plaintiff in order to "appraise the building;" that at that time the building was in very good condition; that he examined the property after the injury complained of in this case, and made an estimate of the cost of "putting the building back in the condition in which it was at the time he saw it in April;" that the building is a total loss, and cannot be repaired, but must be rebuilt in order to put it in the condition it was prior to the accident. Witness was asked by plaintiff's counsel what it would cost to repair or restore the building to the condition it was prior to the accident. The defendant objected to the question and the Court sustained the objection. He was then asked, "What, in your

opinion, was the value of that building as it stood in April, 1915 ?" The question was objected to and the third exception is to the action of the Court in overruling the objection. The witness said, "It was worth about $1,700.00, allowing for depreciation." The Court asked the witness, "Worth more than that,"—and he replied, "To·restore it." The appellant insists that the difference between the value of the building before and after the injury was not the proper measure of damages in this case; that the witness was not competent to testify because he had not seen the building between April and the time of the accident on June 12th, and it was not shown that he had any expert knowledge of the value of real estate. In *Brown* v. *Werner,* 40 Md. 15, the Court said: "The rule in regard to the measure of damages was correctly laid down by the Court. The action was for a *tort,* and the plaintiff was entitled to recover for all damages naturally or necessarily flowing from the wrongful acts of the defendants; and if his house was injured by the careless and negligent manner in which the appellants improved the adjoining house, he was entitled to recover such damages as would be sufficient to reinstate the wall and the house in as good condition as they were prior to the injury," and in the case of *Consolidated Gas Company* v. *Getty,* 96 Md. 683, the Court said: "The Court instructed the jury that the measure of damages was what would have been the fair and reasonable cost of restoring the house to its condition as it stood before the explosion. This was clearly right." It is said in 13 *Cyc.* 150: "As a general rule the measure of damages in actions for injuries to real property is the difference in value before and after the injury to the premises. * * * In some cases the cost of repair or restoration has been adopted as the measure of damages; but in such event the cost of repair must be reasonable and bear some proportion to the injury sustained." It is obvious that the defendant could not have been injured by this ruling, or the granting of the plaintiff's sixth prayer, which instructed the jury

that they could allow the plaintiff the difference between the value of the building before it was injured and the value after the injury, together with the actual damage to tools, stock in trade and machinery, because the witness testified that it would cost more to repair or restore the building to its condition prior to the accident than the amount he stated to be the value of the building. The witness was an experienced builder. He was not asked to express his opinion as to the value of anything except the building. The evidence in the case tends to show that at the time of the injury the building was in practically the same condition it was when the witness examined it in April. Whatever may be the proper measure of damages in this case, the defendant has no ground to complain of the ruling in this exception or the granting of the plaintiff's sixth prayer, so far as the measure of damages is concerned, and we think the evidence was otherwise free from objection.

The sixth and seventh exceptions are to the testimony of G. Arthur Belbin, the plaintiff's son, containing an estimate of the cost of putting the tools and certain parts of the machinery in the plaintiff's building in the condition they were before the building was destroyed. The witness testified that he had been in the business for about twenty-five years; that he and his father made the tools, and that they did work of the kind necessary to repair and reset the machinery, and knew how long it would take and what it would cost, and we think the evidence was, therefore, admissible.

The eighth, ninth, tenth, eleventh and twelfth exceptions are to the rulings of the Court admitting and refusing to strike out the testimony of G. Arthur Belbin, offered for the purpose of showing the plaintiff's loss of profits in his business by reason of the injury to his building. The evidence referred to in these exceptions was clearly inadmissible under the decision of this Court in *Gossage* v. *Phil., B. & W. R. Co.,* 101 Md. 698. In the case of *Svea* v. *Packham,* 92 Md. 479, the Court said: "It is well settled in this State

that in actions of tort the loss of profits in a trade or business may be recovered, if it be the direct result of the defendant's wrongful act and is proven with sufficient certainty." The witness did not state what the profits amounted to in any one month or year during the period referred to in his testimony, and could not tell from his books or bankbook what the receipts from or expenses of the plaintiff's business were during the period covered by his evidence. While this evidence was inadmissible for the reasons stated, we do not think there was reversible error in any of the rulings referred to. Some of the motions to strike out the evidence were too general, and as it was not possible for the jury to determine from the evidence what profits the plaintiff lost by reason of the injury complained of, the defendant could not have been prejudiced by the rulings. Moreover, in the instructions granted in the plaintiff's sixth prayer as to the measure of damages the plaintiff was entitled to recover, loss of profits was excluded from the consideration of the jury.

At the close of the plaintiff's testimony a controversy arose between the Mayor and City Council of Baltimore and the defendant, Mullan, as to who should proceed with the testimony. The matter being submitted to the Court, the Court decided that the defendant, Mullan, should proceed with his testimony, and this ruling is the basis of the thirteenth exception. The matter was entirely within the discretion of the lower Court, and its action cannot be reviewed on appeal by this Court.

The defendant offered in evidence the ordinance of the Mayor and City Council of Baltimore providing for the opening of Key Highway, and to prove that the property of the plaintiff was within the section of the Key Highway referred to in the ordinance; that the Commissioners for Opening Streets of Baltimore City awarded to the plaintiff for the part of his property within the lines of the highway damages to the amount of $1,486,40; that said award was increased by the Commissioners for Opening Streets to the sum

of $1,736.40, and that the plaintiff had appealed to the Baltimore City Court from said award of the Commissioners for Opening Streets. The fourteenth, fifteenth and sixteenth exceptions are to the rulings of the Court excluding this evidence. The contention of the appellant is that under the facts and circumstances of this case "the condemnation proceedings had in connection with this property practically amount to an executed contract of sale of the plaintiff's house, together with the portion of land needed for Key Highway;" and he cites and relies upon the cases of *Brewer* v. *Herbert*, 30 Md. 301, and *Skinner* v. *Houghton*, 92 Md. 68. In *Brewer's Case* the Court held, quoting from the syllabus, "That from the time the owner of an estate enters into a binding agreement for its sale, he holds the same in trust for the purchaser, and the latter becomes the trustee of the purchase money for the vendor, and being thus in equity the owner, the vendee must bear any loss which may happen, and is entitled to any benefit which may accrue to the estate in the interval, between the agreement and the conveyance." The same principle is announced in *Skinner's Case*. The doctrine upon which those cases rest has no application to this case, where the relation of the Mayor and City Council and the plaintiff was not that of a vendor and purchaser of real estate. In the case of *Baltimore* v. *Hook*, 62 Md. 371, the Court said: "It has long been the settled law of Maryland that both private and municipal corporations, when authorized to exercise the power of eminent domain, have the right to renounce the inquisition and select a more eligible route, or wholly to abandon their improvement or enterprise, at any time before actual payment of the amount assessed, either by commissioners or jury, and until that time no title to the property condemned vests in the corporation. But when the sum is paid or tendered the title vests and the constitutional requirement is gratified." In the case of *B. & O. R. R. Co.* v. *Boyd*, 63 Md. 325, JUDGE MILLER said: "It is plain that without such payment, tender

or improvement the city acquired no title, or right of entry, for the purpose of appropriating the plaintiff's property to public use, even though the condemnation proceedings may have been in other respects regular. The attempted condemnation can, therefore, afford no defense to this action. The entry upon this lot, either for the purpose of making a street through it, or for constructing a railroad upon it, was clearly a trespass, and the investment of the money in December, 1883 (after the commencement of the suit), has no effect whatever upon the right of the plaintiffs to recover for the trespasses complained of and committed down to the bringing of their present action." See also *Pitsnogle* v. *W. Md. R. R. Co.,* 123 Md. 667. It is suggested by the appellant that there is no evidence in this case to indicate that the city intends to abandon the proposed improvement. But the principle upon which the appellant's contention rests, and must rest, is that the title to the plaintiff's property passed to the city, and whatever may be the rule elsewhere, it is clear that under the decisions in this State, condemnation proceedings cannot operate to transfer the title until the amount awarded or assessed is paid **or** tendered, and that they afford no defense to an action to recover for injuries to the property. In the case of *American Paving & Con. Co.* v. *Davis,* 127 Md. 477, where a suit was brought to recover for an injury to the plaintiff's dwelling house by fire caused by the negligence of the defendant, this Court held that the fact that the plaintiff had been paid for his loss by an insurance company did not prevent a recovery against the defendant for the injury occasioned by his negligence.

There was no error in the ruling in the seventeenth exception. The fact that the superintendent of the subcontractor followed the directions of the City Engineer would not justify an invasion of the plaintiff's property, or relieve the appellant from liability for injury resulting from the negligence of his servants or agents.

The eighteenth exception is to the refusal of the Court to permit the defendant, Mullan, to answer the following ques-

tion: "What have you to say with respect to the relative
safety of using a steam shovel of the kind that was used
next to Mr. Belbin's house at this time, if the wall of his
house had been properly supported by joists and would have
been free from cracks, and was a sound wall with good plas-
tering, what have you to say?" This ruling was correct. The
witness had testified that he knew the condition of the plain-
tiff's building and that the walls were cracked and very weak.
Assuming the condition of the building to be as he described
it, he was nevertheless under obligation to exercise due care
and responsible for any injury thereto caused by his negli-
gence. In 1 *Cyc.* 779, it is said: "The obligation to use
ordinary care is not affected by the fact that the adjoining
building was illy constructed." And in the case of *Shafer*
v. *Wilson,* 44 Md. 268, the Court said: "If the plaintiff's
house was in bad condition, that did not justify the defend-
ant in throwing it down, or otherwise injuring it, and de-
stroying the plaintiff's business therein. The defendant had
no right to hasten its fall by making improvements in his
own lot in a careless and negligent manner."

The nineteenth exception is to the ruling of the Court on
the prayers. The plaintiff offered seven prayers and the de-
fendant seventeen. The Court below granted the plaintiff's
third prayer, as amended, and his sixth prayer, and the de-
fendant's tenth, fifteenth, sixteenth and eighteenth prayers,
and rejected the others. We find no reversible error in this
ruling. There was evidence tending to show an actual in-
vasion of the plaintiff's property, and he was entitled to
recover such damages as were the direct and natural conse-
quences of the trespass. The defendant was also liable under
the first, second, third, fourth and fifth counts for such in-
juries to plaintiff's building, tools, stock in trade and ma-
chinery as was caused by carelessness and negligence of de-
fendant's servants in operating the steam shovel. *Hanrahan*
v. *Baltimore City,* 114 Md. 517.

The plaintiff's first prayer instructed the jury that if they
found that the steam shovel was so negligently operated as to

cause the plaintiff's wall to fall, and "that as a result of *said*
negligent operation of *said* steam shovel, if they so find, the
plaintiff's wall fell and his building was damaged, and his
tools and stock injured, and his business interfered with, if
they so find, then their verdict must be for the plaintiff,"
and is more explicit as to the negligence entitling the plain-
tiff to recover than the prayers approved in *B. & O.* v.
*Trainor*, 33 Md. 542, and *W. Va. Central R. Co.* v. *Fuller,*
96 Md. 652. What we have said in regard to the third excep-
tion disposes of the defendant's objection to the plaintiff's
sixth prayer, instructing the jury as to the measure of dam-
ages.

The defendant's second, third and fourth prayers refer to
the pleadings and assert, (1) that there was no evidence
legally sufficient to entitle the plaintiff to recover; (2) that
there was no evidence legally sufficient to entitle the plaintiff
to recover for the alleged negligence, and (3) that there was
no evidence legally sufficient to entitle the plaintiff to recover
for the alleged trespass. The defendant's fifth prayer sought
to limit the recovery to nominal damages, and his sixth
prayer asserted that under the sixth and seventh counts of
the declaration the plaintiff could only recover nominal dam-
ages. His exception was abandoned as to his seventh and
eighth prayers, and his ninth, eleventh and eleventh A pray-
ers sought to withdraw the case from the jury as to damages
for the destruction of the wall, and injury to the plaintiff's
tools and machinery. In his thirteenth and thirteenth A
prayers the defendant asked the Court to instruct the jury
that if they found that the work done by the defendant was
done under the supervision and direction of and according
to the grades fixed by the engineers of the city the plaintiff
was not entitled to recover. The defendant's fourteenth
prayer contained the proposition that if the falling of the
wall was caused "wholly or partially by causes other than the
use of the steam shovel" the verdict of the jury should be for
the defendant. His sixteenth A prayer was to the effect that

the use of the steam shovel "was not of itself negligent," and that if the jury found that the defendant exercised reasonable care in operating the steam shovel their verdict should be for the defendant, and by his seventeenth prayer the defendant asked for an instruction that if the jury found that the defendant exercised such a degree of care in the premises as a reasonably prudent person would have exercised under similar circumstances their verdict should be for the defendant. It is clear from what we have already said that all of these prayers were properly rejected. Those seeking to withdraw the case from the jury, and to limit the recovery to nominal damages lose sight of the evidence to which we have referred, while others ignore the sixth and seventh counts of the declaration in which the plaintiff sought to recover for the trespass committed by the defendant and his servants and agents. The liability of the defendant did not, as we have said, depend upon whether or not he followed the instructions of the City Engineer, and the fact that he exercised reasonable care in operating the steam shovel would not relieve him from the consequences of an unlawful invasion of the plaintiff's property. The defendant's tenth prayer, which asserted that there was no evidence in the case legally sufficient to entitle the plaintiff to recover any damages for loss of profits or loss of business overlooks the testimony of the plaintiff to the effect that by reason of the destruction of his building he had to decline two "jobs" from which he could have realized $35.00. But even if there was error in the rejection of this prayer the defendant could not have been injured thereby as the plaintiff's sixth prayer limited the damages the plaintiff could recover to such damages as were caused by the injury to his building, tools, stock in trade and machinery.

This brings us to the ruling on the demurrer. The declaration contains seven counts, and the only criticisms of these counts made in the appellee's brief are that the first, second, third, fourth and fifth counts are too general and vague; that

the fourth count is argumentative, and that in the sixth and seventh counts the plaintiff attempts to combine an action of trespass and trespass on the case in the same count. It is not pointed out in what respect the several counts are open to the objections suggested, and we do not think they are defective for the reasons stated. The first five counts charge that the injuries complained of were caused by the negligent and unskillful manner in which the defendant "excavated the bed of Key Highway adjoining the plaintiff's property," and that the defendant wantonly and maliciously operated the steam shovel, etc., and sufficiently state the negligence upon which the plaintiff relies. This case differs in that respect from the case of *Jeter* v. *Schwind Quarry Co.,* 97 Md. 696, where the declaration set out the several duties the defendant owed the deceased, but failed to state which of those duties the defendant neglected to discharge. These counts are equally as explicit as the second count in *Hanrahan* v. *Baltimore City, supra,* where some of the counts of the declaration were demurred to, and where the Court held the first count bad because it did not allege negligence on the part of the defendants, nor any actual invasion of the plaintiff's property.

The sixth count alleges that the defendants broke and entered the plaintiff's land described therein "by negligently, wantonly and maliciously operating a steam shovel so that it struck the wall of the plaintiff's property and caused said wall to fall, whereby the plaintiff's building was seriously damaged, his tools and stock in trade injured, and his business seriously interfered with." It is said in 1 *Chitty on Pleading,* 146, "In the case of an injury arising from carelessness or unskillfulness in navigating a ship, if the injury were merely attributable to negligence or want of skill, and not to the *wilfull* act of the defendant, with intent to injure the plaintiff, the party injured has, it seems, an election, either to treat the negligence or unskillfulness of the defendant as the cause of action, and to declare in case, or to con-

sider the act itself as the injury, and to declare in trespass."
Mr. Poe, in Vol. 1, Sec. 161, of the 3rd Edition of his work
on *Pleading and Practice,* says that case is a concurrent rem-
edy with trespass "in all cases where the injury is occasioned
by the carelessness and negligence of the defendant, notwith-
standing the act is immediate, *so long as it is not willful,*
and even in cases where both immediate and willful, if the
gist of the action is not the direct consequence of the trespass
itself, but the consequential damages resulting therefrom.
Indeed, it is declared by BLACKSTONE, J., that every action
of trespass, with a *per quod,* includes an action on the case.
The plaintiff may bring trespass for the immediate injury,
and subjoin a *per quod* for the consequential damages." In
the case of *Johnson* v. *Courts,* 3 H. & McH., 510, where the
plaintiff brought an action of trespass *quare clausum fregit,*
the plaintiff was allowed to give evidence of damages to his
crops, occasioned by reason of the defendant driving away
his servants, and in *Moore* v. *Schultz,* 31 Md. 418, where in
an action of tresspass *de bonis asportatis,* the plaintiff was
allowed to recover for the loss of his business, JUDGE ALVEY,
relying upon the case of *Johnson* v. *Courts, supra,* said:
"The plaintiff has alleged the breaking up of his business as
special injury, and she was entitled to show that it was the
natural consequence of the trespass; and if successful in
doing so, she was entitled to compensation to the extent of
actual loss sustained."

The seventh count is substantially the same as the sixth
count. They are both in trespass, and the plaintiff was
entitled to recover under them such damages as were the
direct and natural consequences of the trespass. See also
*B. & O. R. R. Co.* v. *Thompson,* 10 Md. 76; *Lange* v. *Wag-
ner,* 52 Md. 310.

Finding no reversible error in any of the rulings of the
Court below, the judgment must be affirmed.

*Judgment affirmed, with costs.*