# BENJAMIN FINE

*vs.*

# BENJAMIN BECK ET AL.

*Trustee's Sale—Fire Occurring Before Ratification—Abatement of Purchase Price.*

In case there is a material diminution in the value of property sold at trustee's sale, by reason of a fire occurring between the date of the sale and its ratification, the court should make an abatement in the purchase price.                     p. 320

That one to whom property was sold at trustee's sale placed "for rent" signs on the property before the ratification of the sale did not constitute such a taking of possession by him as to deprive him of a right to abatement of the price to the extent of damage caused by a fire subsequently occurring.          p. 319

That the keys to an unoccupied dwelling house on the property were not turned over to the purchaser pending ratification of the sale tended to show that he did not take possession.                     p. 320

That the purchaser, before ratification of the sale, objected to removal of certain fixtures by the lessees of the property did not indicate that he assumed possession or control of the property.                     p. 320

In case property sold at trustee's sale is damaged by fire pending ratification of the sale, the abatement of the purchase price to which the purchaser is entitled is the cost of restoring the property to its former condition, if such cost is not disproportionate to the real injury, while if that is impracticable, the difference in value of the property before and after the injury is the correct measure of abatement.          pp. 320, 321

*Decided January 25th, 1922.*

Appeal from the Circuit Court of Baltimore City (HEUISLER, J.).

Petition by Benjamin Fine for an abatement of the purchase price of property sold to said petitioner by Benjamin Beck and Harry M. Benzinger, Trustees. From an order dismissing the petition, petitioner appeals. Reversed.

The cause was argued before Boyd, C. J., Briscoe, Pattison, Urner, Stockbridge, Adkins, and Offutt, JJ.

*Forrest Bramble,* with whom were *Henry C. Weaver* and *McKee & Bullock* on the brief, for the appellant.

*Harry M. Benzinger* and *Thomas E. Mason,* with whom was *Benjamin Beck* on the brief, for the appellees.

Adkins, J., delivered the opinion of the Court.

On November 18th, 1920, appellant purchased from appellees at trustees' sale certain property on Pennsylvania avenue, part of which was then occupied by Jones & Lamb, for $22,100.00. On December 17th, 1920, before the sale was ratified, two of the parties interested in the proceeds of sale filed exceptions to the sale, and while said exceptions were pending, to wit, on January 7th, 1921, the property was damaged by fire. On January 12th, 1921, appellant filed a petition for an abatement of the purchase money to the amount of damage caused by the fire. On April 18th, 1921, the exceptions were overruled and the sale ratified, "without prejudice to the right of said Benjamin Fine to proceed with his petition filed on January 12, 1921, for an abatement or his right to such an abatement of the purchase price to the extent of the damage to said property by fire on or about January 7, 1921."

A hearing was had on this petition and testimony taken. It appears from the testimony that, at the time of the sale, the lease of Jones & Lamb was about to expire, and they were desirous of having it extended for two months to give them time to move their movable fixtures. They took this matter up with the trustees, and one of the trustees in turn

took it up with appellant. There is some unimportant dif-
ference between the witnesses as to just what was said by
appellant and Mr. Benzinger, one of the trustees, in their
conversation in regard to extending the lease, but we think it
is reasonably clear that appellant, acting under the advice of
counsel, knew that he could not act alone in this matter pend-
ing the ratification of sale, and that he merely joined with
the trustees in agreeing to the extension. This view is
strengthened by letters written by the lessees to Mr. Ben-
zinger and Mr. Fine on the same day, confirming the ar-
rangement arrived at for the extension.

It is to be noted that, in the letter to Mr. Benzinger, he
is asked whether "you desire the Jones & Lamb Company
to pay the December and January rent to you and Mr. Beck
as trustees, or whether this rent should be paid to the pur-
chaser, Mr. Fine?" It does not appear that Mr. Benzinger
made any reply to this inquiry, and the testimony of Fine,
the appellant, that he never received any rent, is not contra-
dicted. It would seem from this that the lessees looked to
the trustees in the matter and not to appellant.

It further appears from the testimony that appellant
placed "for rent" signs on the premises on or about the day
of the sale, but there is no evidence that he did this with the
consent of the appellees. Appellant says he put the signs up
to try it out and see who would want the property when
it came into his possession; that when inquiries were made
he told inquirers that he was not then in a position to deal
with the property, but he would take it up with them if the
sale should be ratified; that he did not show any one over
the premises.

It is manifest he could not have made any binding con-
tract in reference to the property pending the ratification of
sale, and it cannot, therefore, be held that the putting up
of these signs constituted a taking of possession.

No keys were ever turned over to him, nor does there ap-
pear to have been any understanding between him and the

trustees that he was to have control of the property and to be responsible for it pending the ratification of sale.

Of course, the failure to turn over the keys to the part of the property occupied by Jones & Lamb had no significance, but there is uncontradicted testimony that there was an unoccupied dwelling house on the property, and the keys to this were not turned over to appellant.

Something was said in the testimony about appellant going on the premises while Jones & Lamb were moving, and objecting to their tearing out of certain fixtures, and threatening to hold them responsible for any damage they did to the property. But this was only showing a natural interest in property of which he would be the owner in event of ratification of the sale, and does not indicate any assumption of immediate possession or control.

Another question raised at the hearing was whether appellant was entitled to an allowance for the amount of replacement costs, or only to the extent of diminution, if any, in the value of the property by reason of the fire.

There was testimony that it would cost about $2,000 to replace the parts burned. On the other hand, there was testimony of one witness that the part of the building damaged was not worth repairing, and that the value of the property would have been increased if the part of the building where the fire occurred had all been burned.

If there was any material diminution in the value of the property an abatement should be made by the court. *Miller's Equity,* sec. 512; *Bowdoin* v. *Hammond,* 79 Md. 173. But we have been referred to no case which determines the basis of said allowance, and have found only one, *Ex parte Minor,* 11 Vesey, Jr., 559, which gives *any* intimation, and that far from definite, of a proper basis.

In that case the Chancellor said: "Let the Master certify to me what were the conditions of sale, and what has been the deterioration in value by the fire * * *." The Master's report having ascertained "the deterioration in value of the

premises in consequence of the fire," another petition was presented to have the amount found deducted from the purchase money; and it was so ordered.

In actions of tort for injuries to real property the rule in Maryland is:

Where the damaged property can be restored to the condition it was in before the injury, without cost disproportionate to the real injury, the cost of such restoration is the measure of damages. But where that is impracticable, then the difference between the value of the property before and after the injury is the correct measure. *Brown* v. *Werner,* 40 Md. 15; *Consolidated Gas Co.* v. *Getty,* 96 Md. 683; *Piedmont Coal Co.* v. *Kearney,* 114 Md. 496; *Mullan* v. *Belbin,* 130 Md. 313.

This is not a suit for damages, but the above rule seems to furnish a fair guide in considering the question now before us.

If application had been made by the purchaser, before ratification, for an annulment of the sale because he could not get what he purchased, a different question would have been presented.

In the opinion filed by the learned chancellor, no reference is made to the question of the cost of restoration or of the diminution *vel non* in the value of the property; but his order is based on his conclusion "that the said Benjamin Fine was placed in possession of said property at the time of his agreeing to purchase the same, and that he was in possession of said property at the time of the said fire."

We cannot agree with this conclusion; and must therefore reverse the order appealed from, and remand the case for further proceedings.

*Order reversed and cause remanded, costs to be paid out of purchase money.*