THOMAS MULLAN, SR., ET AL. *v.* MAISIE HACKER

[No. 18, October Term, 1946.]

*Decided November 21, 1946.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Alfred J. O'Ferrall, Jr.,* with whom were *O'Ferrall & O'Ferrall* on the brief, for the appellants.

*William S. Wilson, Jr.,* with whom were *Paul G. Ballard* and *Wilson & Ballard* on the brief, for the appellee.

DELAPLAINE, J., delivered the opinion of the Court.

Masie Hacker, widow, owner of a lot of ground on Cator Avenue in Baltimore, improved by a dwelling and a concrete-block garage in the rear, instituted this suit against Thomas Mullan, Sr., Thomas Mullan, Jr., Charles Mullan and Joseph Mullan, individually and trading as Thomas Mullan & Sons, to recover damages to her garage alleged to have been caused by their negligence in underpinning it while excavating on their adjacent land.

At the trial of the case before a jury in the Superior Court of Baltimore City, it was shown that the garage, which was divided by four partition walls to accommodate five automobiles, was built in 1922, and in 1942 defendants, undertaking to build a row of houses on the south side of Forty-first Street and to lay out an alley in the rear, employed workmen to excavate a bank of earth along the southern end of their land near the garage. To support the north wall of the garage, the workmen built an underpinning of stone; and to protect the east wall, they erected a high retaining wall. Plaintiff and her witnesses testified that before the excavation the garage was in good condition; but after the excavation the north wall moved three or four inches out of plumb, the walls cracked, the rafters pulled out from the walls, and the roof fell in. The jury brought in a verdict in favor of plaintiff for $3,000, but upon motion for a new trial plaintiff filed a remittitur for $1,125, and judgment was thereupon entered for $1,875. From that judgment defendants appealed to this Court.

It is an ancient principle of the common law that every owner of land has to right to lateral support from the adjoining soil, and if a landowner removes the earth from his own land so near the land of his neighbor that his neighbor's soil will crumble away under its own weight, he is liable for damages so occasioned. The original theory of lateral support in England was that it was an easement subjecting the adjoining land to a natural servitude. Under that theory it was not necessary to prove any negligence to establish liability, because the right

was violated merely by removal of support. In the course of time, however, there developed the theory that the right to lateral support is a right of property naturally attached to the soil. *Foley v. Wyeth*, 2 Allen (Mass.) 131, 79 Am. Dec. 771, 772. Under this theory it was necessary to show negligence or intention to cause injury. Neither of these conflicting theories, as the American Law Institute has stated, has unqualifiedly prevailed. The two views of the nature of the right of lateral support of land have each contributed to the present law. The ancient view left its influence on the law in so far as the right in respect to the land itself in its natural condition is absolute. 4 *Restatement, Torts,* 185, 186. We reaffirm the statement made by Judge Alvey in 1875 in his opinion in *Baltimore & Potomac R. Co. v. Reaney,* 42 Md. 117, 135, that the right of support to land from the adjoining soil is a right of property, and not an easement; but, if that support is withdrawn and injury ensues, the absence of negligence is immaterial. The right of a landowner to the support of adjoining land is *jure naturae,* like the right to a flowing stream. Each owner has the absolute right to have his land remain in its natural condition unaffected by any act of his neighbor. If an adjoining owner injures his right, he can maintain an action for damages without proving negligence or want of skill on the part of the adjoining owner. *Prete v. Cray,* 49 R. I. 209, 141 A. 609, 59 A. L. R. 1241; *Young v. Mall Investment Co.,* 172 Minn. 428, 215 N. W. 840, 55 A. L. R. 461.

It is well settled, however, that the right of lateral support applies only to the soil in its natural condition. It does not apply to buildings on the land. *Northern Transportation Co. v. City of Chicago,* 99 U. S. 635, 25 L. Ed. 336, 339. In explaining this rule in a Massachusetts case, Chief Justice Gray said: "While each owner may build upon and improve his own estate at his pleasure, provided he does not infringe upon the natural right of his neighbor, no one can by his own act enlarge the liability of his neighbor for an interference with his natu-

ral right. If a man is not content to enjoy his land in its natural condition, but wishes to build upon or improve it, he must either make an agreement with his neighbor, or dig his foundations so deep, or take such other precautions, as to insure the stability of his buildings or improvements, whatever excavations the neighbor may afterward make upon his own land in the exercise of his right." *Gilmore v. Driscoll*, 122 Mass. 199, 23 Am. Rep. 312, 314. Hence, where an excavation is made by a landowner on his own land for a proper purpose and it is not done negligently, unskillfully, or with improper motives, any damage occasioned to a building on adjoining land is *damnum absque injuria*. *Winn v. Abeles*, 35 Kan. 85, 10 P. 443, 57 Am. Rep. 138. But while a landowner is not bound to furnish lateral support sufficient to sustain his adjoining owner's land where the lateral pressure has been increased by a building thereon, nevertheless he must use due care in making an excavation in such a case. The test in determining whether an excavator was negligent in a particular case is whether he did his work in such a careless and improvident manner as to occasion greater danger to the adjoining owner than he would have incurred in reasonable course of such work. *Charless v. Rankin*, 22 Mo. 566, 66 Am. Dec. 642, 644.

It is usually a requirement of due care for an owner of land, who intends to make an excavation thereon and is about to endanger a building on the land of his neighbor, to notify his neighbor of the intended improvement and afford him an opportunity to take precautions to protect his building. *Lasala v. Holbrook*, 4 Paige (N. Y.) 169, 25 Am. Dec. 524; *Schultz v. Byers*, 53 N. J. L. 442, 22 A. 514, 13 L. R. A. 569, 26 Am. St. Rep. 435; *Gerst v. City of St. Louis*, 185 Mo. 191, 84 S. W. 34, 105 Am. St. Rep. 580. Such a notice is a reasonable precaution, especially in a large city, where improvements made by one proprietor, however skillfully they may be conducted, may be attended with accidental and disastrous results to his neighbors. *Shafer v. Wilson*, 44 Md. 268, 281. We have held that there is no imperative obligation

upon a landowner in the absence of statute or ordinance to give an adjoining owner a notice of his intention to excavate in close proximity to the adjoining owner's building. The requirement to give such a notice is predicated upon the propostion that a person in possession of property must use due care to see that it is so used and managed that other persons will not be injured. *Bonaparte v. Wiseman,* 89 Md. 12, 23, 42 A. 918, 44 L. R. A. 482. But in the instant case the duty of defendants was clear, as the Baltimore City Building Code provides that, before the commencement of any excavation which will extend three feet or more in depth and which may affect adjoining property, the owner of the premises on which the excavation is to be done shall give to the adjoining owner notice in writing of the intention to commence, and a copy of the notice shall be filed in the Bureau of Buildings before a permit is issued. Baltimore City Code, 1941 Ed., Art. 3, Ch. 22. In this case plaintiff testified that she did not receive any notice of the intention of defendants to excavate.

Plaintiff testified that at the time of the excavation there was a steady rain for three days, and the ditch under the central part of the garage was left open five or six days, and it was so muddy that the workmen were unable to put in any more underpinning. Her daughter, Mrs. Edna Franks, recalled that the rain at the time of the excavation was "one of those hard blowing rains, and it came right from the north, and just washed right in under the garage, and as it washed under, it washed the dirt out and the dirt ran down where the alley is now." Mrs. Franks explained how that the workmen "had dug some of it out, and had built a little up, but they hadn't gotten up under the garage in order to support the garage." William Spencer, who built the garage for plaintiff and her husband, was positive in his opinion that the settling of its walls resulted from the fact that the stone underpinning had been laid on soft dirt or else the earth had washed out from beneath the garage after the stone had been put in. Evidence as to

the condition of the weather at the time excavation was made is relevant and material, since what would be prudent and careful operation in dry weather might be negligent and reckless in wet weather, softening and weakening the soil. 1 *Am. Jur., Adjoining Landowners,* Sec. 27. It is our conclusion that the evidence of negligence in this case was legally sufficient for consideration of the jury.

Defendants also urged that there was no proof that their work was the proximate cause of the damage. At the trial of the case the building inspector assigned to this job denied that he could say what had caused the settling of the walls. But the Chief Building Inspector of Baltimore, Milton W. Ford, testified without hestitation that the damage could not have been caused by anything other than a settling of the walls, and necessarily that must have resulted from defendants' excavation, because a gradual settling would have been complete in less than 20 years after the garage was built. It is a well established rule that damages cannot be recovered unless the negligent act complained of is the direct and continuing cause of the injury without the intervention of any independent factor. *Bloom v. Good Humor Ice Cream Co.,* 179 Md. 384, 387, 18 A. 2d 592; *Parsons v. Chesapeake & Potomac Telephone Co.,* 181 Md. 502, 505, 30 A. 2d 788. But it is equally true that in a suit for damages the court will not indulge in subtleties and refinements as to causation that might defeat the ends of justice. When two or more independent causes concur in producing an effect, and it cannot be determined which was the controlling and efficient cause, or whether the event would have happened at all without the concurrence of both, and a particular party is responsible for only the consequences of one of such causes, then recovery cannot be had, because it cannot be judicially determined whether the damage would have been done without such concurrence. On the other hand, a wrongdoer will not be allowed to qualify or apportion his own wrong, and if damage occurs while his wrongful

act is in operation, he cannot set up the defense that there was a more immediate cause of the loss, if that cause was put into operation by his act. To entitle such a party to exemption, he must show that the same loss would have happened if the act had not been done. *Baltimore & Potomac R. Co. v. Reaney,* 42 Md. 117, 136, 137; *Consolidated Gas Co. v. Getty,* 96 Md. 683, 690, 54 A. 660, 94 Am. St. Rep. 603. Accordingly we hold that the fact that the walls of a building, near which excavation is being made, may be cracked and weak, does not remove the obligation upon the excavator on adjoining land to exercise due care, and does not free him from liability for damages caused by his negligence. *Mullan v. Belbin,* 130 Md. 313, 324, 100 A. 384.

There is no question that the measure of damages for property is the cost of restoring it, if it can be restored to the condition it was in before the injury without cost disproportionate to the injury; but where the cost of restoring is greater than the diminution in the market value, the correct measure is the difference between the value of the property before the injury and after. *Brown v. Werner,* 40 Md. 15; *Piedmont & George's Creek Coal Co. v. Kearney,* 114 Md. 496, 515, 79 A. 1013; *Fine v. Beck,* 140 Md. 317, 321, 117 A. 754, 25 A. L. R. 68. Defendants excepted to the court's instruction as to the measure of damages on the ground that there was no admissible evidence on which the measure of damages could be applied. They contended that Spencer's opinion that the value of the garage in June, 1942, was $2,250 was inadmissible for the reason that he did not see it after it was built in 1922 until January, 1946. In our opinion Spencer's testimony was admissible. He was qualified to testify for two reasons: (1) Because he was thoroughly familiar with the building, having laid the foundation and the concrete blocks, furnished the lumber and other material, put on the roof, and hung the doors, and (2) because he was an expert on the subject of property values, having been engaged in the construction of houses and garages for 34 years, and further-

more had the advantage of hearing the witnesses describe the condition of the garage in June, 1942. He was therefore sufficiently familiar with its condition to express his opinion of its value. He was also qualified to give his opinion that the garage in the damaged condition was worth $250, the salvage value of the concrete blocks.

Finally, defendants objected to the following hypothetical question asked W. G. Michaelman, contractor: "Assuming that in June, 1942, before Mr. Mullan began this construction work, Mrs. Hacker had this five-car garage there, which had been built in 1922 at a cost of $1,300, and assuming that some work was done by Mr. Hacker at the value of $350, and that the garage has been there from that time until June, 1942, and that in June, 1942, the roof did not leak and there were no cracks in the north and east walls other than frost cracks, and the east wall was not separated from the concrete floor, and there was no damage to the roof of the building, and the garage was built of concrete blocks, and it had an asphalt roof with a tar coating, and the north and east walls were not out of plumb, and the joists were made of 2 by 8 lumber and were in proper position, and allowing for normal depreciation of a garage of that type, are you able to tell the market value of that building in June, 1942?"

Defendants objected to this question on the ground that it did not specifically describe the condition of the walls and other parts of the garage. The rule is firmly established that a hypothetical question must contain all material facts in evidence essential to the formation of a rational opinion. *Mathieson Alkali Works v. Redden,* 177 Md. 560, 10 A. 2d 699; *Starr v. Oriole Cafeterias,* 182 Md. 214, 34 A. 2d 335. But it is also well settled that when a witness is called to express an opinion based upon personal observation, it is unnecessary to submit to him any hypothetical question before he can express his opinion. Of course, where the evidence is conflicting or complicated by numerous details, or where the grounds upon which the witness is to base his opinion are not

fully understood, then it is proper for the court to require the facts to be submitted to him, hypothetically, even though he had the advantage of personal observation. However, as we said in *Langenfelder v. Thompson*, 179 Md. 502, 508, 20 A. 2d 491, 136 A. L. R. 960, it would be an idle ceremony to require all the evidence bearing on a problem to be recited in detail in a hypothetical question when the main facts are undisputed and the expert is familiar with them.

Unquestionably Michaelman was qualified to testify as an expert. He had been a contractor and builder for 40 years, and he had also served for many years on committees to appraise real estate for building associations of which he was a director. Moreover, he was familiar with the plaintiff's garage from personal observation. He had inspected it on two occasions after the damages were incurred. He testified that he had made careful examinations of its walls. He gave assurance, after the court had received testimony that the garage was in good condition in June, 1942, that he could tell what its value was at that time. He thereupon estimated its value at $2,000. We find no prejudicial error in the introduction of this estimate, especially since it was lower than Spencer's. The building is a simple form of construction, with which the witness was thoroughly familiar, and under these circumstances we think the question was admissible. We do not mean to decide, however, that such a question to a witness with such belated acquaintance with the building would be admissible in other cases involving more complicated construction. *Abromatis v. Amos*, 127 Md. 394, 401, 96 A. 554.

As the estimates made by the expert witnesses were admissible, the jury had sufficient evidence of the garage's value to which the measure of damages could be applied.

*Judgment affirmed, with costs.*